1   WALTER F. BROWN (SBN: 130248)
    wbrown@paulweiss.com
2   **PAUL, WEISS, RIFKIND, WHARTON**
       **& GARRISON LLP**
3   535 Mission Street, 25th Floor
    San Francisco, CA 94105
4   Telephone: (628) 432-5100
    Facsimile:  (628) 232-3101
5
    MELISSA FELDER ZAPPALA (*Pro Hac Vice*)
6   mzappala@dirllp.com
    **DUNN ISAACSON RHEE LLP**
7   401 9th Street NW
    Washington DC, 20004
8   Telephone: (202) 240-2900
    Facsimile:  (202) 240-2050
9
    Meredith R. Dearborn (SBN: 268312)
10  mdearborn@dirllp.com
    **DUNN ISAACSON RHEE LLP**
11  345 California Street, Suite 600
    San Francisco, CA 94104
12  Telephone: (202) 240-2900

13  *Attorneys for Defendant Meta Platforms, Inc.*

14

15            **UNITED STATES DISTRICT COURT**

16           **NORTHERN DISTRICT OF CALIFORNIA**

17              **SAN FRANCISCO DIVISION**

18  SARA ISGUR, ERIK BRAND, EDDIE          Case No. 3:24-cv-06559-WHO
    EDWARDS, LINDA METZLER, and
19  RICHARD REPP, individually and on      **DEFENDANT META PLATFORMS, INC.'S**
    behalf of all others similarly situated,   **NOTICE OF MOTION AND MOTION TO**
20                                          **DISMISS THE CLASS ACTION**
                       Plaintiffs,          **COMPLAINT; MEMORANDUM OF**
21                                          **POINTS AND AUTHORITIES IN SUPPORT**
           v.                               **THEREOF**
22
    META PLATFORMS, INC.
23                                          Date: October 8, 2025
                       Defendant.           Time: 2:00 p.m. PT
24                                          Courtroom: 2 (17th Floor)
                                            Judge: Hon. William H. Orrick
25

26

27

28

# TABLE OF CONTENTS

INTRODUCTION ............................................................................................................... 1

BACKGROUND ............................................................................................................... 2

LEGAL STANDARD......................................................................................................... 3

ARGUMENT .................................................................................................................... 4

I.     The TOS Expressly Bar All But One of Plaintiffs' Claims. ................................... 4

II.    Plaintiffs' Breach of Contract Claim Fails for the Additional Reason That They Fail to Plausibly Plead This Claim (Count I). ........................................................... 6

      A.    The TOS Do Not Contain the Promises Claimed by Plaintiffs............................. 6

      B.    Plaintiffs Have Not Sufficiently Alleged Damages. ............................................ 12

III.    Plaintiffs Fail to Plausibly Plead Breach of the Implied Covenant of Good Faith and Fair Dealing (Count II). .............................................................................. 15

IV.    Plaintiffs Fail to Plead a Violation of California's Unfair Competition Law (Count III). 17

      A.    Plaintiffs Have Not Alleged Injury in Business or Property................................. 18

      B.    Plaintiffs' Allegations Do Not Establish That Meta's Conduct Is Unlawful......... 19

      C.    Plaintiffs' Allegations Do Not Establish That Meta's Conduct Is Fraudulent. ....................................................................................................... 20

      D.    Plaintiffs' Allegations Do Not Establish That Meta's Conduct Is Unfair. ............ 22

V.    Plaintiffs Fail to Plead Unjust Enrichment (Count IV)....................................... 24

CONCLUSION ................................................................................................................ 25

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

*In re Actimmune Mktg. Litig.*,
 2009 WL 3740648 (N.D. Cal. Nov. 6, 2009), *aff'd*, 464 F. App'x 651 (9th Cir.
 2011) .................................................................................................................... 24, 25

*Advanced Risk Managers, LLC* v. *Equinox Mgmt. Grp., Inc.*,
 2021 WL 4243400 (N.D. Cal. Sept. 17, 2021) ....................................................... 15

*Amacker* v. *Bank of Am.*,
 2014 WL 4771668 (N.D. Cal. Sept. 24, 2014) ....................................................... 23

*Anderson* v. *Apple Inc.*,
 500 F. Supp. 3d 993 (N.D. Cal. 2020) (Orrick, J.)................................................. 17

*Antman* v. *Uber Techs., Inc.*,
 2018 WL 2151231 (N.D. Cal. May 10, 2018) ........................................................ 19

*Appling* v. *State Farm Mut. Auto. Ins. Co.*,
 340 F.3d 769 (9th Cir. 2003)................................................................................... 16

*Ashcroft* v. *Iqbal*,
 556 U.S. 662 (2009) ................................................................................................... 3

*Baba* v. *Hewlett-Packard Co.*,
 2010 WL 2486353 (N.D. Cal. June 16, 2010) ........................................................ 24

*Bass* v. *Facebook, Inc.*,
 394 F. Supp. 3d 1024 (N.D. Cal. 2019) ............................................................. 5, 18

*Beluca Ventures LLC* v. *Einride Ektiebolag*,
 660 F. Supp. 3d 898 (N.D. Cal. 2023) (Orrick, J.)................................................. 16

*Block* v. *eBay, Inc.*,
 747 F.3d 1135 (9th Cir. 2014).............................................................................. 6, 7

*Caraccioli* v. *Facebook, Inc.*,
 700 F. App'x 588 (9th Cir. 2017) ............................................................................. 4

*Coremetrics, Inc.* v. *Atom Park.com, LLC*,
 2005 WL 3310093 (N.D. Cal. Dec. 7, 2005) ......................................................... 13

*Courtesy Oldsmobile, Inc.* v. *Gen. Motors Corp.*,
 329 F. App'x 73 (9th Cir. 2009) ............................................................................. 11

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Damner* v. *Facebook, Inc.*,
 2020 WL 7862706 (N.D. Cal. Dec. 31, 2020) ........................................................................... 5

*Dang* v. *Samsung Elecs. Co., Ltd.*,
 2018 WL 11348883 (N.D. Cal. July 2, 2018) .......................................................................... 20

*Daniels* v. *Alphabet Inc.*,
 2021 WL 2865147 (N.D. Cal. July 8, 2021) .............................................................................. 8

*Davis* v. *HSBC Bank Nev., N.A.*,
 691 F.3d 1152 (9th Cir. 2012) ................................................................................................. 23

*Dinan* v. *SanDisk LLC*,
 2020 WL 364277 (N.D. Cal. Jan. 22, 2020) ........................................................................... 21

*Donohue* v. *Apple, Inc.*,
 871 F. Supp. 2d 913 (N.D. Cal. 2012) .................................................................................... 16

*Drum* v. *San Fernando Valley Bar Ass'n*,
 182 Cal. App. 4th 247 (2010) ........................................................................................... 23, 24

*Ebeid* v. *Facebook, Inc.*,
 2019 WL 2059662 (N.D. Cal. May 9, 2019) ........................................................................... 16

*Frenzel* v. *AliphCom*,
 76 F. Supp. 3d 999 (N.D. Cal. 2014) (Orrick, J.) .................................................................... 22

*In re Gilead Scis. Sec. Litig.*,
 536 F.3d 1049 (9th Cir. 2008) ................................................................................................... 4

*Girard* v. *Toyota Motor Sales, U.S.A., Inc.*,
 316 F. App'x 561 (9th Cir. 2008) ........................................................................................... 21

*In re Google Inc. Cookie Placement Consumer Priv. Litig.*,
 806 F.3d 125 (3d Cir. 2015) .................................................................................................... 18

*In re Google RTB Privacy Litig.*,
 606 F. Supp. 3d 935 (N.D. Cal. June 13, 2022) ...................................................................... 17

*Great Minds* v. *Off. Depot, Inc.*,
 945 F.3d 1106 (9th Cir. 2019) ................................................................................................. 10

*Great Pac. Sec.* v. *Barclays Cap., Inc.*,
 743 F. App'x 780 (9th Cir. 2018) ........................................................................................... 20

*Grouse River Outfitters Ltd.* v. *Oracle Corp.*,
 2018 WL 6099783 (N.D. Cal. Nov. 21, 2018) ........................................................................ 14

*Hadley* v. *Kellogg Sales Co.*,
 243 F. Supp. 3d 1074 (N.D. Cal. 2017) ...................................................................... 19, 22, 23

*Hammerling* v. *Google LLC*,
    2022 WL 17365255 (N.D. Cal. Dec. 1, 2022), *aff'd*, 2024 WL 937247 (9th Cir.
    Mar. 5, 2024)............................................................................................................. 11

*Hammerling* v. *Google LLC*,
    615 F. Supp. 3d 1069 (N.D. Cal. 2022) ................................................................... 22

*Hodges* v. *Apple Inc.*,
    2013 WL 6698762 (N.D. Cal. Dec. 19, 2013) (Orrick, J.), *aff'd*, 640 F. App'x
    687 (9th Cir. 2016).............................................................................................. 20, 24

*Hodsdon* v. *Mars., Inc.*,
    162 F. Supp. 3d 1016 (N.D. Cal. 2016), *aff'd*, 891 F.3d 857 (9th Cir. 2018)........ 24

*Hodsdon* v. *Mars, Inc.*,
    891 F.3d 857 (9th Cir. 2018)..................................................................................... 22

*Hyunh* v. *Quora, Inc.*,
    2019 WL 11502875 (N.D. Cal. Dec. 19, 2019) ................................................. 13, 18

*In re iPhone Application Litig.*,
    6 F. Supp. 3d 1004 (N.D. Cal. 2013) ....................................................................... 22

*Johnson* v. *Microsoft Corp.*,
    2007 WL 2404844 (W.D. Wash. Aug. 17, 2007) ..................................................... 14

*Joude* v. *WordPress Found.*,
    2014 WL 3107441 (N.D. Cal. July 3, 2014)............................................................... 6

*Kennedy* v. *Meta Platforms, Inc.*,
    2024 WL 4565091 (N.D. Cal. Oct. 23, 2024).............................................................. 5

*Kennedy* v. *Meta Platforms, Inc.*,
    2025 WL 1935433 (N.D. Cal. June 5, 2025) ....................................................... 5, 8, 9

*King* v. *Facebook, Inc.*,
    2019 WL 6493968 (N.D. Cal. Dec. 3, 2019) (Orrick, J.), *aff'd*, 845 F. App'x
    691 (9th Cir. 2021)......................................................................................... 1, 5, 11

*King* v. *Facebook, Inc.*,
    572 F. Supp. 3d 776 (N.D. Cal. 2021) ..................................................................... 13

*Lagrisola* v. *N. Am. Fin. Corp.*,
    96 Cal. App. 5th 1178 (2023).................................................................................... 17

*In re LinkedIn User Priv. Litig.*,
    932 F. Supp. 2d 1089 (N.D. Cal. 2013) .................................................................... 12

*Lloyd* v. *Facebook, Inc.*,
    2022 WL 4913347 (N.D. Cal. Oct. 3, 2022) .......................................................................... 10

*Long* v. *Dorset*,
    369 F. Supp. 3d 939 (N.D. Cal. 2019), *vacated in part on other grounds*, 2021
    WL 7829668 (N.D. Cal. May 21, 2021) ......................................................................... 5, 11

*McDonald* v. *Wells Fargo Bank, N.A.*,
    2013 WL 6512881 (N.D. Cal. Dec. 12, 2013) ..................................................................... 20

*McGee* v. *S-L Snacks Nat'l*,
    982 F.3d 700 (9th Cir. 2020) ............................................................................................. 18

*Moates* v. *Facebook, Inc.*,
    2024 WL 2853976 (N.D. Cal. Apr. 3, 2024) ..................................................................... 11

*Morton* v. *Twitter, Inc.*,
    2021 WL 1181753 (C.D. Cal. Feb. 19 2021) ..................................................................... 11

*Mulato* v. *Wells Fargo Bank, N.A.*,
    76 F. Supp. 3d 929 (N.D. Cal. 2014) .................................................................................. 6

*NorthBay Healthcare Grp.-Hosp. Div.* v. *Blue Shield of Cal. Life & Health Ins.*,
    342 F. Supp. 3d 980 (N.D. Cal. 2018) (Orrick, J.) .............................................................. 22

*O'Donnell* v. *Bank of Am., Nat'l Ass'n*,
    504 F. App'x 566 (9th Cir. 2013) ...................................................................................... 19

*Parducci* v. *Overland Sols., Inc.*,
    399 F. Supp. 3d 969 (N.D. Cal. 2019) (Orrick, J.) ............................................................. 20

*Perkins* v. *LinkedIn Corp.*,
    53 F. Supp. 3d 1190 (N.D. Cal. 2014) ............................................................................... 20

*Price* v. *Apple, Inc.*,
    2022 WL 1032472 (N.D. Cal. Apr. 6, 2022) ..................................................................... 14

*Puentes* v. *Wells Fargo Home Mortg., Inc.*,
    160 Cal. App. 4th 638 (2008) ............................................................................................ 19

*Razuki* v. *Caliber Home Loans, Inc.*,
    2018 WL 6018361 (S.D. Cal. Nov. 15, 2018) ................................................................... 19

*Richards* v. *Centripetal Networks, Inc.*,
    709 F. Supp. 3d 914 (N.D. Cal. 2024) ........................................................................... 15, 16

*Rojas-Lozano* v. *Google, Inc.*,
    159 F. Supp. 3d 1101 (N.D. Cal. 2016) ........................................................................ 20, 22

*Rudgayzer* v. *Yahoo! Inc.*,
    2012 WL 5471149 (N.D. Cal. Nov. 9, 2012) ........................................................................ 15

*Ruiz* v. *Gap, Inc.*,
    380 F. App'x 689 (9th Cir. 2010) ...................................................................................... 15

*Russell* v. *Walmart, Inc.*,
    680 F. Supp. 3d 1130 (N.D. Cal. 2023) ............................................................................. 25

*S. Bay Chevrolet* v. *Gen. Motors Acceptance Corp.*,
    72 Cal. App. 4th 861 (1999) .............................................................................................. 23

*Salari* v. *Walt Disney Parks and Resorts U.S., Inc.*,
    2023 WL 11983325 (C.D. Cal. Aug. 28, 2023) ................................................................ 17

*Schulz* v. *Cisco Webex, LLC*,
    2014 WL 2115168 (N.D. Cal. May 20, 2014) ................................................................... 25

*In re Sequoia Benefits & Ins. Data Breach Litig.*,
    2024 WL 1091195 (N.D. Cal. Feb. 22, 2024) ................................................................... 19

*Smith* v. *Sabre Corp.*,
    2017 WL 11678765 (C.D. Cal. Oct. 23, 2017) .................................................................. 19

*Solomon* v. *N. Am. Life & Cas. Ins. Co.*,
    151 F.3d 1132 (1998) ........................................................................................................ 16

*Song fi Inc.* v. *Google, Inc.*,
    108 F. Supp. 3d 876 (N.D. Cal. 2015) ................................................................................. 7

*In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*,
    903 F. Supp. 2d 942 (S.D. Cal. 2012) ............................................................................... 21

*Textron Fin. Corp.* v. *Nat'l Union Fire Ins. Co.*,
    118 Cal. App. 4th 1061 (2004) .......................................................................................... 23

*In re Tobacco II Cases*,
    46 Cal. 4th 298 (2009) ...................................................................................................... 20

*TopDevz, LLC* v. *LinkedIn Corp.*,
    2021 WL 6113003 (N.D. Cal. Dec. 27, 2021) .................................................................. 16

*Udo* v. *Wells Fargo Bank, N.A.*,
    2023 WL 8600791 (N.D. Cal. Dec. 12, 2023) .................................................................. 25

*W. Union Tel. Co.* v. *Nester*,
    309 U.S. 582 (1940) .......................................................................................................... 14

*Weisbuch* v. *Cnty. of Los Angeles*,
    119 F.3d 778 (9th Cir. 1997) ............................................................................................... 4

*Williamson* v. *Genentech, Inc.*,
    94 Cal. App. 5th 410 (2023)................................................................. 17

*Woods* v. *Google Inc.*,
    2011 WL 3501403 (N.D. Cal. Aug. 10, 2011)..................................... 12

*World Surveillance Grp., Inc.* v. *La Jolla Cove Invs., Inc.*,
    2014 WL 1411249 (N.D. Cal. Apr. 11, 2014) ..................................... 25

*Wozniak* v. *YouTube, LLC*,
    100 Cal. App. 5th 893 (2024)................................................................. 11

*Yastrab* v. *Apple Inc.*,
    2015 WL 1307163 (N.D. Cal. Mar. 23, 2015) ..................................... 21

*Zepeda* v. *PayPal, Inc.*,
    777 F. Supp. 2d 1215 (N.D. Cal. Feb. 15, 2011) ............................ 7, 25

*Zhang* v. *Superior Court*,
    57 Cal. 4th 364 (2013) ......................................................................... 23

**Statutes**

Cal. Bus. & Prof. Code § 17200 .................................................................. 2, 17

Cal. Bus. & Prof. Code § 17204 ................................................................ 17, 20

Cal. Civ. Code § 1668 ..................................................................................... 4

Cal. Civ. Code § 1798.81.5 ........................................................................ 19, 20

Cal. Civ. Code § 1798.100 ............................................................................. 19

Federal Trade Commission Act .................................................................. 19, 23

**Other Authorities**

Federal Rule of Civil Procedure 9(b).......................................................... 20, 25

Federal Rule of Civil Procedure 12(b)(6) ...................................................... 3

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**NOTICE OF MOTION AND MOTION**

PLEASE TAKE NOTICE that on October 8, 2025, at 2:00 p.m. PT, or as soon thereafter as this matter may be heard, in the United States District Court for the Northern District of California, San Francisco Courthouse, Courtroom 2, 17th Floor, at 450 Golden Gate Avenue, San Francisco, CA 94102, before the Hon. William H. Orrick, Defendant Meta Platforms, Inc. ("Meta") will and hereby does move the Court to dismiss Plaintiff Sara Isgur's Second Amended Class Action Complaint (*Isgur* v. *Meta Platforms, Inc.*, No. 3:24-cv-06559-WHO (Dkt. No. 37)) in its entirety. This Motion is supported by this Notice of Motion and Motion; the accompanying Memorandum of Points and Authorities; the accompanying Declaration of Michael Duffey and exhibits; Meta's accompanying Request for Consideration of Documents Incorporated by Reference and for Judicial Notice; all matters of which the Court may take judicial notice; the pleadings and papers on file herein; and any other argument or evidence that may be received by the Court.

**RELIEF SOUGHT**

Meta seeks an order dismissing Plaintiffs' Amended Complaint for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).

**STATEMENT OF ISSUE TO BE DECIDED**

Should all claims against Meta be dismissed for failure to state a claim upon which relief can be granted pursuant to Federal Rules of Civil Procedure 8, 9(b), and 12(b)(6)?

**INTRODUCTION**

In this putative class action, Plaintiffs Sarah Isgur, Erik Brand, Eddie Edwards, Linda Metzler, and Richard Repp seek to hold Defendant Meta Platforms, Inc. ("Meta") liable for the takeover of their Facebook accounts by third-party bad actors. But the very Terms of Service ("TOS") that undergird Plaintiffs' claims contain an express limitation of liability provision that bar all but one of their claims. Putting aside the limitation of liability provision, Plaintiffs fail to plausibly plead any of their claims.  The heart of Plaintiffs' Second Amended Complaint (the "Second Amended Complaint" or "SAC"; Dkt. No. 37) the notion that Meta breached its own TOS and Privacy Policy ("Privacy Policy")[1] when third parties allegedly took over Plaintiffs' Facebook accounts and Meta failed to restore their access. But in claiming breach of contract, Plaintiffs imagine promises that Meta never made and allege harms that are not remediable either at law or in equity. Plaintiffs misrepresent the language in the TOS and Privacy Policy. These policies make clear that, while Meta seeks to keep its community of users safe and to maintain the security of its services, Meta does not (and could not) contractually guarantee users that they will always enjoy uninterrupted access to their Facebook accounts. Nor does the TOS nor the Privacy Policy promise that Meta will restore access to taken-over accounts or provide any specific type of customer service to assist locked-out users in real time. The provisions identified by Plaintiffs do "not create affirmative obligations" on the part of Meta. *King* v. *Facebook, Inc.*, 2019 WL 6493968, at *2 (N.D. Cal. Dec. 3, 2019) (Orrick, J.), *aff'd*, 845 F. App'x 691 (9th Cir. 2021) (citation omitted). The Court should not countenance Plaintiffs' attempt to rewrite Meta's obligations under the TOS and Privacy Policy.

Plaintiffs attempt to circumvent the plain language of the TOS and Privacy Policy by claiming that Meta breached the implied covenant of good faith and fair dealing by failing to exercise its discretion to restore access to, terminate, or disable accounts taken over by hackers.

---

[1] The relevant TOS and Privacy Policies are attached as exhibits to the Declaration of Michael Duffey, submitted contemporaneously herewith (the "Duffey Declaration"). The four Plaintiffs' accounts were allegedly compromised at different points in time between June 2023 and March 2025, and Meta updated its TOS and Privacy Policies throughout this period. Nonetheless, there are no material differences among the relevant provisions throughout the different versions of the TOS and Privacy Policies.

But this claim is impermissibly duplicative of Plaintiffs' breach of contract claim. Moreover, Plaintiffs seek to obligate Meta to restore account access even though the TOS explicitly disclaims any such obligation—the TOS state that Meta "make[s] no guarantees that [Facebook] always will be safe, secure, or error-free, or that [Facebook] will function without disruptions, delays, or imperfections." Ex.[2] 1 (TOS 7/26/2022) at 15; Ex. 5 (TOS 1/5/2025) at 10. An implied covenant claim cannot be used to impose obligations otherwise disclaimed by plain contractual language.

Moreover, Plaintiffs fail to allege any actionable injury as a result of Meta's supposed breaches of contract and of the implied covenant of good faith and fair dealing—they identify only non-economic and emotional harm from the loss of their Facebook accounts, such as the loss of an "online repository of…memories." SAC ¶ 116. As courts in this District have repeatedly held, the kinds of harms that Plaintiffs identify are not compensable economic losses that can serve as the bases for these contractual claims, nor as the bases for their claim for violation of California's Unfair Competition Law, Cal. Bus. & Prof. § 17200 *et seq.* ("UCL") (which also fails for several other reasons). Lastly, Plaintiffs' unjust enrichment claim fails because, *inter alia*, they do not allege that their agreement with Meta was otherwise invalid or unenforceable.

Accordingly, the Second Amended Complaint must therefore be dismissed.

## BACKGROUND

Meta operates Facebook, an online service that helps users build community, discover, connect, and share messages, photos, videos, and links to other content. Facebook users like Plaintiffs agree to the TOS, which incorporate the Privacy Policy, when they use or continue to use their Facebook account. SAC ¶ 148.

Isgur filed her Original Complaint on September 18, 2024. (Dkt. No. 1).  Meta timely filed a Motion to Dismiss on November 19, 2024.   (Dkt. No. 22).  In lieu of opposing the motion, Plaintiff filed an Amended Complaint on January 21, 2025.  (Dkt. No. 27).  Just four days before

---

[2] Citations to "Ex." are to the exhibits attached to the Duffey Declaration. Except where otherwise indicated, exhibit pincites are to the page numbers in the ECF headers associated with the exhibits to the Duffey Declaration.

Meta's March 24, 2025 deadline to respond, Plaintiff notified Meta that she may seek to amend her Complaint a second time to bring in additional clients she had recruited. (Dkt. No. 31).   Isgur then filed for leave to file her SAC (Dkt. 35), which was granted on June 4, 2025, almost nine months after Plaintiff filed the first iteration of this lawsuit.

Plaintiffs allege that between June 2023 and March 2025, unknown users took over their Facebook accounts. *Id.* ¶¶ 16-20, 48.  Plaintiffs contend that they reported the issues to Meta and/or utilized "automated support options that were available to [them]" without logging into their accounts, but Plaintiffs were nonetheless unable to gain access to their accounts. *Id.* ¶¶ 50, 63, 89-90, 102.

Plaintiffs claim that Meta breached the TOS because Meta allegedly failed to: prevent account takeovers, restore account access to locked-out users, provide sufficient customer support services to locked-out users, and provide unobstructed access to users' Facebook accounts while Meta holds a "license" to users' personal data and content. *Id.* ¶¶ 150, 156-57. While Plaintiffs assert in conclusory fashion that they suffered "economic injury" as a result of the takeover, Plaintiffs do not identify any actual economic injury. *Id.* ¶ 124. Instead, they claim that they lost "photos, posts, personal messages, business and personal connections." *Id.* ¶ 116. They also claim they are at potential risk of future identity theft. *Id.* ¶ 117. In the absence of actual damages, Plaintiffs allege that they are entitled to (1) $100 in liquidated damages (the damages *limitation* in Meta's TOS), or, (2) $100 in nominal damages. *Id.* ¶¶ 158-60. Plaintiffs further contend that Meta had full discretion to determine whether to restore Facebook account access or terminate accounts that were taken over and that, by failing to exercise that discretion with respect to Plaintiffs' accounts, Meta breached the covenant of good faith and fair dealing. *Id.* ¶¶ 37, 169, 174-76. Plaintiffs also bring a claim for violation of California's UCL, *id.* ¶¶ 183-202, and an unjust enrichment claim in the alternative. *Id.* ¶¶ 203-15.

## LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain sufficient factual matter "to 'state a claim to relief that is plausible on its face.'" *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp.* v. *Twombly*, 550 U.S.

544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). Courts need not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig*., 536 F.3d 1049, 1055 (9th Cir. 2008) (citation omitted). And even where facts in the pleadings are accepted as true, "a plaintiff may plead [her]self out of court" if she "plead[s] facts which establish that she cannot prevail on h[er] . . . claim." *Weisbuch* v. *Cnty. of Los Angeles*, 119 F.3d 778, 783 n.1 (9th Cir. 1997) (citation omitted).

## ARGUMENT

## I.    THE TOS EXPRESSLY BAR ALL BUT ONE OF PLAINTIFFS' CLAIMS.

The TOS contain an explicit limitation of liability provision that precludes Plaintiffs' claims for breach of contract, breach of the implied covenant of good faith and fair dealing, and unjust enrichment.[3] The TOS state that, "[t]o the extent permitted by law," Meta "DISCLAIM[S] ALL WARRANTIES, WHETHER EXPRESS OR IMPLIED, INCLUDING THE IMPLIED WARRANTIES OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, TITLE, AND NON-INFRINGEMENT." Ex. 1 (TOS 7/26/2022) at 15; Ex. 5 (TOS 1/5/2025) at 10. Further, Meta "do[es] not control or direct what people and others do or say," and Meta is not "responsible for their actions or conduct (whether online or offline)." Ex. 1 (TOS 7/26/2022) at 15; Ex. 5 (TOS 1/5/2025) at 10. Because Meta "cannot predict when issues might arise" with its services, Meta's liability is limited to "the fullest extent permitted by applicable law." Ex. 1 (TOS 7/26/2022) at 15; Ex. 5 (TOS 1/5/2025) at 11. Meta makes clear that its services are provided "as is;" that Meta "make[s] no guarantees that [its services] always will be safe, secure, or error-free, or that they will function without disruptions, delays, or imperfections." Ex. 1 (TOS 7/26/2022) at 15; Ex. 5 (TOS 1/5/2025) at 10. Accordingly, "under no circumstance" is Meta liable to its users

---

[3] Although violations of law cannot be disclaimed under California law, *see* Cal. Civ. Code § 1668, to the extent Plaintiffs' claims under the UCL overlap with these claims, they should be dismissed as well. *See Caraccioli* v. *Facebook, Inc.*, 700 F. App'x 588, 590 (9th Cir. 2017) (district court properly dismissed UCL claim "to the extent it was premised on an alleged breach of contract, because these claims are barred by Facebook's terms of service").

1    for any lost "information[] or data" arising out of the TOS or use of Meta's services, "however

2    caused and on any theory of liability, including negligence." Ex. 1 (TOS 7/26/2022) at 15; Ex. 5

3    (TOS 1/5/2025) at 11.

4         These limitation of liability provisions foreclose Plaintiffs' claims for breach of contract,

5    breach of the implied covenant, and unjust enrichment. Each of these claims seeks to hold Meta

6    liable for failing to provide "error-free" access to Facebook "without disruptions, delays, or

7    imperfections"—precisely what is prohibited by the limitation of liability provisions. Ex. 1 (TOS

8    7/26/2022) at 15; Ex. 5 (TOS 1/5/2025) at 11. Courts in this District have consistently held that

9    Meta's TOS foreclose Meta's liability for claims related to user account access and lockouts,

10   including Judge Haywood S. Gilliam, Jr. in an opinion issued just last month. *Kennedy* v. *Meta*

11   *Platforms, Inc.*, 2025 WL 1935433, at *2-3 (N.D. Cal. June 5, 2025) (Meta's TOS "include

12   explicit limitations on liability" and Meta "is not responsible for the actions of third parties and

13   disclaims all applicable warranties" in account takeover case); *see also Kennedy* v. *Meta*

14   *Platforms, Inc.*, 2024 WL 4565091, at *1-4 (N.D. Cal. Oct. 23, 2024) (causes of action "based on

15   the alleged failure to keep Plaintiff's account secure and free from disruptions due" to third-party

16   conduct were barred by the TOS's limitation on liability provisions); *Damner* v. *Facebook, Inc.*,

17   2020 WL 7862706, at *2, 7 (N.D. Cal. Dec. 31, 2020) (TOS's statement that "Facebook is not

18   responsible for the actions of third parties" foreclosed breach of contract and implied covenant

19   claims based on alleged account takeover); *Long* v. *Dorset,* 369 F. Supp. 3d 939, 948-49 (N.D.

20   Cal. 2019), *vacated in part on other grounds*, 2021 WL 7829668 (N.D. Cal. May 21, 2021)

21   (Facebook's terms of service disclaimed liability for harm from allegedly non-expeditious

22   reinstatement of plaintiff's administrator status); *Bass* v. *Facebook, Inc.*, 394 F. Supp. 3d 1024,

23   1037-38 (N.D. Cal. 2019) (limitation of liability provisions in Facebook's TOS foreclosed breach

24   of contract, breach of the implied covenant, and quasi-contract claims based on data breach

25   affecting plaintiffs' Facebook accounts); *King*, 2019 WL 6493968, at *2 ("As courts in this

26   District have explained, while Facebook's Terms' 'place restrictions on users' behavior, they 'do

27   not create affirmative obligations' on Facebook." (citation omitted)). There is no reason to find

28   otherwise here.

1  **II.    PLAINTIFFS' BREACH OF CONTRACT CLAIM FAILS FOR THE**
2  **ADDITIONAL REASON THAT THEY FAIL TO PLAUSIBLY PLEAD THIS**
   **CLAIM (COUNT I).**

3       Even if the limitation of liability provisions did not bar Plaintiffs' breach of contract claim

4  (*see supra* § 1), it would fail for two additional reasons: (1) Plaintiffs have failed to allege the

5  existence of any contractually enforceable promise, and (2) Plaintiffs have failed to allege

6  damages sufficient to sustain a breach of contract claim under California law.

7       To plead a breach of contract claim, a party must allege: (1) the existence of a contract;

8  (2) the plaintiff's performance or excuse for nonperformance; (3) the defendant's breach; and (4)

9  damages. *Mulato* v. *Wells Fargo Bank, N.A.*, 76 F. Supp. 3d 929, 949 (N.D. Cal. 2014). The

10 alleged breach must be of an "enforceable promise." *See Block* v. *eBay, Inc.*, 747 F.3d 1135,

11 1138-40 (9th Cir. 2014) (dismissing breach of contract claims based on eBay user agreement

12 because neither of the provisions identified by the plaintiff "constitute[d] an enforceable

13 promise"). Plaintiffs fail to identify a promise Meta breached or sufficiently allege damages.

14     **A.    The TOS Do Not Contain the Promises Claimed by Plaintiffs.**

15     "A plaintiff cannot predicate a breach of contract claim on a defendant's terms of service

16 where those terms did not commit the defendant to performing any particular action." *Joude* v.

17 *WordPress Found.*, 2014 WL 3107441, at *5 (N.D. Cal. July 3, 2014) (no breach of terms of

18 service for failure to remove misleading blog post where defendant did not promise to remove

19 offending content). Absent such commitment, there is no promise that can be breached. *See id.*

20 Here, neither the TOS nor the Privacy Policy promise that Meta will do any of the things Plaintiff

21 alleges form the basis of a breach.

22     Plaintiffs claim that the TOS and Privacy Policy contain binding commitments to: (1)

23 prevent account takeovers; (2) restore users' access to accounts that were taken over; (3) provide

24 specific forms of customer support services to users who had their accounts taken over; and (4)

25 provide unobstructed access to users' accounts, while Meta holds a "license" to utilize users'

26 personal data and content. *See SAC* ¶¶ 2-9, 32-37, 111-12, 150-57.[4] Plaintiffs' theories of breach

---

27 [4] Plaintiffs refer to Exhibits A and B in the Second Amended Complaint but do not attach
28 exhibits. Meta assumes Plaintiffs are referring to Exhibits A and B in Plaintiff Isgur's Amended
   Complaint. The language cited by Plaintiffs in their Second Amended Complaint does not

1    are undermined by their own allegations and find no support in the language of the TOS or

2    Privacy Policy.

3    At the outset, Plaintiffs' own amended allegations foreclose any theory of breach founded

4    upon Meta's alleged failure to restore users' access to accounts or to provide specific forms of

5    customer support services to locked-out Facebook users. Plaintiffs allege that "investigating

6    account takeovers, restoring access to locked-out users, and deleting and disabling stolen

7    accounts *is within Meta's sole discretion*." SAC ¶ 37 (emphasis added). A party cannot breach a

8    contract by undertaking acts that are within its sole discretion. *Song fi Inc* v. *Google, Inc.*, 108 F.

9    Supp. 3d 876, 885 (N.D. Cal. 2015) ("[C]onduct authorized by a contract cannot give rise to a

10   claim for breach of the agreement."); *Zepeda* v. *PayPal, Inc.*, 777 F. Supp. 2d 1215, 1220 (N.D.

11   Cal. Feb. 15, 2011) (dismissing breach of contract claim based on conduct left to defendant's

12   "sole discretion"). Therefore, Meta cannot have breached the TOS or Privacy Policy by allegedly

13   failing to restore access to taken-over accounts or to provide specific forms of customer support

14   services to locked-out Facebook users.

15   Further, the TOS and Privacy Policy provisions that Plaintiffs rely upon do not "contain

16   explicit promissory language" that could support their theories of breach. *Block*, 747 F.3d at

17   1139. Neither the TOS nor the Privacy Policy contain promises to Plaintiffs (or to any of

18   Facebook's users) that their accounts would never be taken over, that they would have

19   uninterrupted access to their accounts (including while Meta retained the right to use their data

20   and content), or that Meta would provide any specific form of customer service.

21   ***First***, Plaintiffs rely on the TOS's statement that Meta provides services that "[p]romote

22   the safety, security, and integrity of our services, combat harmful conduct and keep our

23   community of users safe." SAC ¶¶ 34, 151, 189; Ex. 1 (TOS 7/26/2022) at 5; Ex. 5 (TOS

24   1/5/2025) at 4. But *promoting* safety, security, and integrity—which is of great importance to

25   Meta—is not the same thing as contractually guaranteeing that accounts will not be taken over,

26   that accounts can always be recovered, or that Meta will provide users with access to real-time

27   _____

28   materially differ from the language in the policies in effect at the time of the account
     compromises.

1    customer support teams. *See Daniels* v. *Alphabet Inc.*, 2021 WL 2865147, at *2 (N.D. Cal. July 8,

2    2021) (dismissing breach of contract claim premised on, *inter alia*, YouTube's failure to provide

3    an appeals process where Terms of Service "did not guarantee an appeals process in any

4    particular form"). It is not possible for Meta to make such a promise—takeovers can result from

5    the actions of third-party bad actors (such as phishing or malware use) or a user's own internet

6    practices (such as sharing or recycling passwords), neither of which are in Meta's control. In any

7    event, Plaintiffs do not plead any facts that show that Meta does not provide services to

8    "[p]romote the safety, security, and integrity of [its] services, combat harmful conduct and keep

9    [its] community of users safe." To the contrary, Plaintiffs' allegations identify one of the many

10   ways Meta promotes security—Plaintiffs concede that Meta provides users with "automated

11   support options." SAC ¶¶ 50, 102.

12        *Second*, Plaintiffs rely on the TOS's statement that Meta "work[s] hard to maintain the

13   security . . . of our . . . services." Ex. 1 (TOS 7/26/2022) at 5; Ex. 5 (TOS 1/5/2025) at 4. But,

14   again, committing to working hard is not a *contractual guarantee* of account security or that users

15   could access specific forms of customer support services. *See Kennedy*, 2025 WL 1935433, at *3

16   (similar statements in Meta's Privacy Policy "offer[] no promises or guarantees about the ways in

17   which Defendant may respond to a particular issue"). Nor have Plaintiffs pleaded facts showing

18   Meta does not "work hard to maintain the security" of Facebook—Plaintiffs' allegations

19   regarding Meta's "automated support options" for locked-out users show the opposite. SAC ¶¶

20   50, 102.

21        *Third*, Plaintiffs rely on the TOS's statement that Meta "employ[s] dedicated teams

22   around the world, work[s] with external service providers, partners and other relevant entities and

23   develop[s] advanced technical systems to detect potential misuse." Ex. 1 (TOS 7/26/2022) at 5;

24   Ex. 5 (TOS 1/5/2025) at 4. But the TOS neither specify nor guarantee the kind of work that these

25   "dedicated teams" conduct, nor does it contain any representations that these teams will provide

26   any specific form of customer support services. Meta's "dedicated teams" can, and do, work to

27   identify misuse of Facebook and to protect its users, but that does not mean that these "dedicated

28   teams" must provide the specific type of customer support sought by Plaintiffs. Moreover,

1   Plaintiffs acknowledge that an automated system alerted them that an account had been taken

2   over, meaning that Meta does, in fact, have teams that "develop advanced technical systems to

3   detect potential misuse" of its services. SAC ¶¶ 35, 49, 58-61, 75-78, 88, 152, 190.

4          Nonetheless, Plaintiffs contends that Meta affirmatively promised to protect their data,

5   claiming that in the Privacy Policy Meta promises that it "***will***" do certain things, including that

6   Meta will "[i]nvestigate suspicious activity," "[d]etect, prevent and combat harmful or unlawful

7   behavior," "[d]etect and prevent spam, other security matters and other bad experiences," and

8   "[m]aintain the integrity of [Meta's] Products." *Id.* ¶¶ 8, 155, 191 (emphasis added). The Privacy

9   Policy does not say that Meta "**will**" engage in those activities.[5] *Kennedy*, 2025 WL 1935433, at

10  *3 ("Defendant's Privacy Policy . . . does not promise that Defendant will 'detect when someone

11  needs help and provide support, 'investigate suspicious activity, '[d]etect, prevent and combat

12  harmful and unlawful behavior,' or '[d]etect and prevent spam, other security measures and other

13  bad experiences.'"). Rather, the Privacy Policy says that Meta "***work[s] to***" do these things and

14  others, including "[v]erify accounts and activity." Ex. 2 (Privacy Policy 6/15/2023) at 30; Ex. 3

15  (Privacy Policy 6/26/2024) at 24; *see also* Ex. 4 (Privacy Policy 11/14/2024) at 19-20 (Meta

16  "work[s] to . . . [v]erify accounts, identity and activity"). As such, the Privacy Policy does not

17  guarantee that Meta "will" engage in any of the preventative conduct identified by Plaintiffs.

18  *Compare* SAC ¶ 8 *with* Ex. 2 (Privacy Policy 6/15/2023) at 30; Ex. 3 (Privacy Policy 6/26/2024)

19  at 24; *see also* Ex. 4 (Privacy Policy 11/14/2024) at 19-20; *Kennedy*, 2025 WL 1935433, at *3

20  ("[T]he Privacy Policy simply provides a list of 'some ways [Meta] promote[s] safety, security,

21  and integrity' and examples of how it may communicate with users. It offers no promises or

22  guarantees about the ways in which Defendant may respond to a particular issue."). And, contrary

23  to Plaintiffs' assertion that Meta was obligated to provide customer support service teams, the

24  Privacy Policy makes clear that Meta will rely on "automated processing techniques" and only in

25  "some instances[] conduct manual (human) review" to "[v]erify accounts and activity,"

26

27  _____

[5] Meta pointed out in its original motion to dismiss that Plaintiff had misquoted the Privacy
Policy. *See* Dkt. No. 22 at 14-15. Despite this, Plaintiff's Second Amended Complaint continues

28  to misrepresent the language of the Privacy Policy. *See* SAC ¶¶ 8, 155, 191.

1    "[i]nvestigate suspicious activity, [d]etect, prevent, and combat harmful or unlawful behavior,"

2    and "[d]etect and prevent spam, other security matters and other bad experiences." Ex. 2 (Privacy

3    Policy 6/15/2023) at 93; Ex. 3 (Privacy Policy 6/26/2024) at 74; *see also* Ex. 4 (Privacy Policy

4    11/14/2024) at 58.

5           **Fourth**, Plaintiffs rely on language in the TOS that states, "Instead of paying to use

6    Facebook . . . , by using the Meta Products covered by these Terms, you agree that we can show

7    you personalized ads and other commercial and sponsored content that businesses and

8    organizations pay us to promote on and off Meta Company Products . . . . We collect and use your

9    personal data in order to provide the services described above to you." Ex. 1 (TOS 7/26/2022) at

10    6-7; Ex. 5 (TOS 1/5/2025) at 5. Despite Plaintiffs' claims, this does not amount to a promise to

11    provide uninterrupted access to Facebook so long as Meta retains the right to use Facebook users'

12    personal data or content. To the contrary, the TOS make clear that Facebook is provided "as is";

13    that Meta does not guarantee that Facebook "always will be safe, secure, or error-free, or that [it]

14    will function without disruptions, delays, or imperfections"; and that Meta cannot "predict when

15    issues might arise with [Facebook]." Ex. 1 (TOS 7/26/2022) at 15; Ex. 5 (TOS 1/5/2025) at 10-

16    11. Further, the TOS explicitly state that Meta is under no affirmative remediation obligation

17    should it learn of "potential misuse" or "harmful conduct towards others." Ex. 1 (TOS 7/26/2022)

18    at 5; Ex. 5 (TOS 1/5/2025) at 4. Rather, the TOS state that on such occasions, Meta "*may* take

19    appropriate action based on our assessment that *may* include – notifying you, offering help,

20    removing content, removing or restricting access to certain features, disabling an account, or

21    contacting law enforcement." Ex. 1 (TOS 7/26/2022) at 5; Ex. 5 (TOS 1/5/2025) at 4 (emphases

22    added). Accordingly, the TOS do not guarantee the continued safety, security, or availability of

23    users' Facebook accounts, regardless of whether Meta continues to use Facebook users' personal

24    data or retains a license to their content. *See Great Minds* v. *Off. Depot, Inc.*, 945 F.3d 1106, 1110

25    (9th Cir. 2019) ("[T]he terms of a contract must be construed in a manner that takes into account

26    the context of the language and is consistent with the contract as a whole." (citation omitted;

27    alteration in original)); *see also Lloyd* v. *Facebook, Inc.*, 2022 WL 4913347, at *1-2, *9 (N.D.

28    Cal. Oct. 3, 2022) (finding that Meta's TOS do not obligate it to act after a user makes the

1    company "aware of harmful actions by third parties").

2        *Moates* v. *Facebook, Inc.* is instructive. 2024 WL 2853976 (N.D. Cal. Apr. 3, 2024).

3    There, the plaintiff alleged that Meta disabled his Facebook account and, much like Plaintiffs

4    here, asserted that Meta "fail[ed] to provide [plaintiff] with access to his information" in violation

5    of the TOS. *Id.* at *1. The court dismissed the claim, finding that the plaintiff not only failed to

6    plead the "specific contractual obligation" that Meta allegedly breached, but also that the TOS

7    "contain[ed] no such obligations" for Meta to provide the plaintiff with account access. *Id.*; *see*

8    *also Wozniak* v. *YouTube, LLC*, 100 Cal. App. 5th 893, 920 (2024) (allegations that Google

9    allowed hackers to take over YouTube channels did not establish a breach of terms of service

10   because statements that Google used "advanced security" and sought to "keep every Google

11   product and service secure" were "more akin to general policies or statements" than "specific

12   promises" that could be breached).[6] As in *Moates*, the TOS do not include the obligations that

13   Meta allegedly breached. Plaintiffs' breach of contract claim should be dismissed.

14       Similarly, other Courts have found that the TOS do not obligate Meta to prevent takeovers

15   or guarantee account access to users. Like Plaintiffs here, in *Long* v. *Dorset*, the plaintiff alleged

16   that his Facebook page was hacked and that Facebook worked too slowly to restore his access, in

17   breach of the TOS provision stating that Facebook "employ[s] dedicated teams . . . and develop[s]

18   technical systems to detect misuse of [its] products, harmful conduct towards others, and

19   situations where [Facebook] may be able to support its community." 369 F. Supp. 3d at 948. The

20   court rejected the claim, stating, "Facebook's TOS 'place[d] restrictions on users' behavior,'" but

21   did "not create affirmative obligations" on the part of Facebook. *Id.* (citation omitted; alteration in

22   original); *see also King*, 2019 WL 6493968, at *2 ("As courts in this District have explained,

---

23   [6] At most, the TOS provisions identified by Plaintiffs are statements of objectives that are not
24   legally enforceable promises. *E.g.*, *Courtesy Oldsmobile, Inc.* v. *Gen. Motors Corp.*, 329 F.
     App'x 73, 76 (9th Cir. 2009) (language identifying the "objectives" of a party to a contract was
25   "unambiguously aspirational and insufficient to impose an obligation"); *Hammerling* v. *Google*
     *LLC*, 2022 WL 17365255, at *11 (N.D. Cal. Dec. 1, 2022), *aff'd*, 2024 WL 937247 (9th Cir. Mar.
26   5, 2024) ("aspirational and prefatory statements" are "not express promises"); *Morton* v. *Twitter,*
     *Inc.*, 2021 WL 1181753, at *5 (C.D. Cal. Feb. 19 2021) (finding there is nothing to suggest that
27   Twitter's content-moderation policies "are binding, as opposed to merely aspirational
28   statements").

1    while Facebook's Terms' 'place restrictions on users' behavior, they 'do not create affirmative

2    obligations' on Facebook." (citation omitted)).

3         In addition to the alleged commitments in the TOS and Privacy Policy, Plaintiffs also

4    identify language on a webpage in the Facebook Help Center titled "Facebook's policies on

5    disabling hacked, unused, or unconfirmed accounts" (the "Help Center Webpage"), which they

6    allege amounts to an enforceable promise. SAC ¶ 36. There is a link to the Help Center Webpage

7    in the TOS—"Learn more about how we disable and delete accounts." *Id.* Plaintiffs contend that

8    the Help Center Webpage states that "Meta . . . 'may disable or delete your account'" in certain

9    circumstances, and that, in such a case, there are "steps you can take to unlock your account." *Id.*

10   It is unclear whether Plaintiffs allege a breach of this language—Plaintiffs do not include it in

11   their description of their breach of contract cause of action (Count I). *Id.* ¶¶ 146-60.

12        Regardless, that language is not an enforceable promise. The Help Center Webpage is not

13   part of the TOS nor any other agreement between Meta and Plaintiffs. For a linked webpage to be

14   incorporated into a separate terms of service document, it "must be [1] clear and unequivocal, the

15   [2] reference must be called to the attention of the other party and he must consent thereto, and

16   [3] the terms of the incorporated document must be known or easily available to the contracting

17   parties." *Woods* v. *Google Inc*., 2011 WL 3501403, at *3 (N.D. Cal. Aug. 10, 2011) (citation

18   omitted). The "learn more" link is not a sufficiently "clear and unequivocal" reference "called to

19   the attention of the other party" that required the other party's "consent thereto." *See id.* The Help

20   Center Webpage was therefore not incorporated into the TOS.[7]

21        **B.    Plaintiffs Have Not Sufficiently Alleged Damages.**

22        Damages are an essential element of a breach of contract claim. *See, e.g.*, *In re LinkedIn*

23   *User Priv. Litig.*, 932 F. Supp. 2d 1089, 1093-94 (N.D. Cal. 2013). Plaintiffs claim that they

24   suffered "economic injury" as a result of Meta's conduct, SAC ¶ 124, but they do not identify any

25   actual economic injury that they suffered. Instead, they identify purely non-economic harm,

26   which cannot suffice to establish this essential element as a matter of law.

27   _____

[7] Nor does Plaintiff allege that she reviewed or agreed to any statement on the Help Center
28   Webpage.

Plaintiffs contend that they were damaged by Meta's alleged breach because they lost access to "photos, posts, personal messages, business and personal connections, and more." *Id.* ¶ 116. Plaintiffs also allege that they were "harmed because they are left vulnerable to nefarious uses of their identity and information as hackers operate their account." *Id.* ¶ 117. The interruption in Plaintiffs' access to their accounts and their associated content, even if they may have emotional or sentimental value, is not a compensable economic loss that can serve as the basis of a breach of contract claim. *See King* v. *Facebook, Inc.*, 572 F. Supp. 3d 776, 790-91 (N.D. Cal. 2021) (dismissing breach of contract and implied covenant claims finding "it is difficult to see how, *e.g.*, the photographs allegedly destroyed have some kind of economic value independent of any emotional attachment"). Moreover, as noted *supra* Section I, the TOS make clear that Meta will not be liable for "lost . . . information[] or data." Ex. 1 (TOS 7/26/2022) at 15; Ex. 5 (TOS 1/5/2025) at 11. The future threat of "nefarious use[]" of Plaintiff's identity and Facebook account does not establish damages for the purposes of a breach of contract claim. *See Hyunh* v. *Quora, Inc.*, 2019 WL 11502875, at *10 (N.D. Cal. Dec. 19, 2019) ("Plaintiffs have not alleged that they suffered from identity theft – only that they are at an increased risk of identity theft – and therefore there are no damages to mitigate." (internal quotations and citation omitted)).

Plaintiffs also appear to claim damages on the theory that Meta retains the "benefit of the bargain," SAC ¶¶ 4, 40, but they do not expressly do so. Nor could they. Plaintiffs are not harmed by Meta's alleged license to their personal data or their alleged inability to terminate this license. SAC ¶¶ 154, 157. Although Plaintiffs allege that Meta derives revenue from the data of Facebook users via these purported license grants, this cannot form the basis of any damages claim. Plaintiffs' data may have some economic value *to Meta*, but Plaintiffs have not alleged that it had any economic value *to them*. Compensating Plaintiffs in the amount of their data's economic value to Meta would place them in a better position than had the contract been fully performed (accepting Plaintiffs' allegation that the contract was not performed). *See Coremetrics, Inc.* v. *Atom Park.com, LLC*, 2005 WL 3310093, at *7 (N.D. Cal. Dec. 7, 2005). Therefore, they have no economic damages under this theory.

In the absence of economic damages, Plaintiffs base their breach of contract claim on (1) liquidated damages or (2) nominal damages. Neither is sufficient to sustain Plaintiffs' claim.

Relying on the following provision in Section 4.3 of the TOS, Plaintiffs claim they are entitled to liquidated damages in the amount of $100:

> Our aggregate liability arising out of or relating to these Terms or the Meta Products will not exceed the greater of $100 or the amount you have paid us in the past twelve months.

SAC ¶ 110-12; Ex. 1 (TOS 7/26/2022) at 15; Ex. 5 (TOS 1/5/2025) at 11. But this provision *limits damages* up to $100 or the amount paid by a Facebook user in the preceding 12 months; it does not provide for liquidated damages in the amount of $100. *See also* SAC ¶¶ 158, 180 (alleging that the TOS provision is a "damages limitation provision"). A contractual provision that "limit[s] the amount of damages recoverable for breach is not an agreement to pay either liquidated damages or a penalty." Restatement (First) of Contracts § 339 cmt. G (Am. L. Inst. 1932). Additionally, the TOS's damages cap cannot be a liquidated damages provision because liquidated damages are "an amount of compensation to be paid in the event of a breach of contract, the sum of which is fixed and certain by agreement." *Price* v. *Apple, Inc.*, 2022 WL 1032472, at *3 (N.D. Cal. Apr. 6, 2022) (quoting *Chodos* v. *W. Publ'g Co.*, 292 F.3d 992, 1002 (9th Cir. 2002)). The TOS's damages cap does not identify a sum that is "fixed and certain"— damages may be any amount less than $100 or the amount a Facebook user has paid Meta in the preceding twelve months. Ex. 1 (TOS 7/26/2022) at 15; Ex. 5 (TOS 1/5/2025) at 11; *see W. Union Tel. Co.* v. *Nester*, 309 U.S. 582, 585, 587-88 (1940) (provision that foreclosed company's liability for damages "beyond the sum of five hundred dollars" was "not intended to prescribe a definite liability (liquidated damages), but is a limitation upon the maximum possible recovery for actual loss or damage"); *Grouse River Outfitters Ltd.* v. *Oracle Corp.*, 2018 WL 6099783, at *1-2 (N.D. Cal. Nov. 21, 2018) (provision that stated that contracting parties' maximum liability "shall in no case exceed the equivalent of 12 months in subscription fees applicable at the time of the event" was not a liquidated damages provision, but rather a limitation of liability) (collecting cases); *Johnson* v. *Microsoft Corp.*, 2007 WL 2404844, at *2 (W.D. Wash. Aug. 17, 2007) ("[W]here a provision does not prescribe a definite liability, but rather limits the maximum

permissible recovery for actual loss or damage properly alleged and proved by evidence, such clause is a limitation of liability, not a liquidated damages clause.").

Plaintiffs alternatively seek nominal damages in the amount of $100. SAC ¶¶ 45, 111-12, 159-160. However, "a breach of contract claim does not accrue until the plaintiff shows an actionable and appreciable harm beyond mere nominal damages." *Advanced Risk Managers, LLC* v. *Equinox Mgmt. Grp., Inc.*, 2021 WL 4243400, at *7 (N.D. Cal. Sept. 17, 2021) (cleaned up; citation omitted); *see also Ruiz* v. *Gap, Inc.*, 380 F. App'x 689, 691 (9th Cir. 2010) (plaintiff failed "to adduce evidence of the appreciable and actual damage necessary to sustain a contract claim under California law" despite seeking nominal damages). Accordingly, while "nominal damages have been awarded in breach of contract lawsuits, the non-breaching party must still allege actual damages in order to support a prima facie case." *Rudgayzer* v. *Yahoo! Inc.*, 2012 WL 5471149, at *6 (N.D. Cal. Nov. 9, 2012). Plaintiffs have not pleaded actual damages, and therefore her allegation of nominal damages cannot save her claim.

## III.   PLAINTIFFS FAIL TO PLAUSIBLY PLEAD BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING (COUNT II).

Even if the limitation of liability provision in the TOS did not bar Plaintiffs' implied covenant claim, it would fail for several additional reasons. ***First***, it is duplicative of their breach of contract claim, and "[t]he implied covenant may not . . . duplicate a breach of contract claim." *Richards* v. *Centripetal Networks, Inc.*, 709 F. Supp. 3d 914, 922 (N.D. Cal. 2024). Plaintiffs allege that Meta has sole discretion to restore access to or delete taken-over accounts and that Meta has allegedly exercised this discretion in bad faith, allowing it to profit off the data and content of Facebook users who have had their accounts taken over. SAC ¶¶ 164, 168, 174-77. This is nothing more than a claim that Meta should have restored access to Plaintiffs' account and failed to do so, which is the basis for Plaintiffs' breach of contract claim. *Compare id.* ¶ 154 *with* ¶ 167; *compare id.* ¶ 157 *with* ¶ 169. Additionally, Plaintiffs request the same exact damages for their breach of contract and breach of the implied covenant claims. *Compare id.* ¶¶ 158-60 *with* ¶¶ 180-82.

When "allegations 'do not go beyond the statement of a mere contract breach and, relying on the same alleged acts, simply seek the same damages or other relief already claimed in a

1    companion contract cause of action,'" the "claim for breach of the implied covenant 'may be

2    disregarded as superfluous.'" *Richards*, 709 F. Supp. 3d at 923 (citation omitted). Because

3    Plaintiffs' breach of the implied covenant claim is "based on the same facts and seek[s] the same

4    remedy" as her breach of contract claim, it should be dismissed. *See Beluca Ventures LLC* v.

5    *Einride Ektiebolag*, 660 F. Supp. 3d 898, 911-12 (N.D. Cal. 2023) (Orrick, J.).

6        *Second*, Plaintiffs' implied covenant claim must be dismissed because it conflicts with the

7    express terms of the TOS. An implied covenant "cannot impose substantive duties or limits on the

8    contracting parties beyond those incorporated in the specific terms of their agreement." *Appling* v.

9    *State Farm Mut. Auto. Ins. Co.*, 340 F.3d 769, 779 (9th Cir. 2003) (quotation omitted). Plaintiffs

10    claim that Meta breached the implied covenant by not exercising its discretion to restore access to

11    or terminate Plaintiffs' account. But implying such an obligation contradicts the TOS, which make

12    clear that Meta has no obligation to restore user access. *See Ebeid* v. *Facebook, Inc.*, 2019 WL

13    2059662, at *8 (N.D. Cal. May 9, 2019) (dismissing breach of implied covenant claim premised

14    on conduct that "Facebook had the contractual right [to do in its] . . . sole discretion"); *see also*

15    *Solomon* v. *N. Am. Life & Cas. Ins. Co.*, 151 F.3d 1132, 1137 (1998) ("[A] party cannot be held

16    liable on a bad faith claim for doing what is expressly permitted in the agreement."). The TOS

17    explicitly state that Meta "make[s] no guarantees that [Facebook] always will be safe, secure, or

18    error-free, or that [Facebook] will function without disruptions, delays, or imperfections." Ex. 1

19    (TOS 7/26/2022) at 15; Ex. 5 (TOS 1/5/2025) at 10. Plaintiffs' attempt to write into the TOS an

20    implicit duty to restore access violates these express terms. *See Donohue* v. *Apple, Inc.*, 871 F.

21    Supp. 2d 913, 931 (N.D. Cal. 2012) ("[T]he implied covenant is 'limited to assuring compliance

22    with the express terms of the contract, and cannot be extended to create obligations by the

23    contract.'" (citation omitted)); *see also TopDevz, LLC* v. *LinkedIn Corp.*, 2021 WL 6113003, at

24    *10 (N.D. Cal. Dec. 27, 2021) (dismissing claim for breach of implied covenant based on conduct

25    expressly disclaimed in agreement at issue).

26        *Third*, Plaintiffs do not plausibly allege Meta acted consciously, deliberately, or in bad

27    faith. A plaintiff alleging breach of the implied duty "must show that the conduct of the defendant

28    . . . demonstrates a failure or refusal to discharge contractual responsibilities, prompted not by an

honest mistake, bad judgment or negligence but rather by a conscious and deliberate act, which unfairly frustrates the agreed common purposes and disappoints the reasonable expectations of the other party." *Anderson* v. *Apple Inc.*, 500 F. Supp. 3d 993, 1029 (N.D. Cal. 2020) (Orrick, J.) (citation omitted). Apart from two conclusory allegations that Meta's failure to restore account access was in bad faith, *see* SAC ¶¶ 39, 177, nowhere do Plaintiffs allege any facts supporting a conclusion that this conduct was carried out in a conscious and deliberate manner to unfairly deprive Plaintiffs of any benefit to which they were entitled. This requires dismissal of the implied covenant claim. *See In re Google RTB Privacy Litig.*, 606 F. Supp. 3d 935, 945 (N.D. Cal. June 13, 2022) (dismissing breach of the implied covenant claim where bad faith only conclusorily alleged); *Salari* v. *Walt Disney Parks and Resorts U.S., Inc.*, 2023 WL 11983325, at *4 (C.D. Cal. Aug. 28, 2023) (to allege a breach of the implied covenant, a plaintiff "must allege bad faith in [the defendant's] discharge of its contractual responsibilities," *i.e.*, "a 'conscious and deliberate act' done to frustrate fulfillment of her contract that goes beyond a mere breach of contract").

**Fourth**, Plaintiffs failed to sufficiently allege damages for the same reasons that her alleged damages cannot sustain her breach of contract claim. *See supra* § II.B.

## IV.   PLAINTIFFS FAIL TO PLEAD A VIOLATION OF CALIFORNIA'S UNFAIR COMPETITION LAW (COUNT III).

Plaintiffs' UCL claim also fails. The UCL prohibits "any unlawful, unfair, or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. Standing to bring a private claim under the UCL is limited to any "person who has suffered injury in fact and has lost money or property as a result of unfair competition." *Id.* § 17204. In 2004, the California electorate voted "to materially curtail the universe of those who may enforce the UCL in a private action by confining standing to those actually injured by a defendant's business practices." *Lagrisola* v. *N. Am. Fin. Corp.*, 96 Cal. App. 5th 1178, 1187 (2023) (cleaned up; citation omitted); *see also Williamson* v. *Genentech, Inc.*, 94 Cal. App. 5th 410, 417 (2023) ("California voters intended to address perceived abuses of the unfair competition law by changing section 17204 to *narrow* the standing rules to apply only to people who suffered economic injuries." (emphasis in original)). Standing under section 17204 is thus "substantially narrower than federal standing under article III" of the

1    United States Constitution. *McGee* v. *S-L Snacks Nat'l*, 982 F.3d 700, 705 n.3 (9th Cir. 2020)

2    (internal quotations and citation omitted).

3          Plaintiffs have not alleged an injury sufficient to confer standing to bring a UCL claim.

4    Even if Plaintiffs could establish this threshold standing requirement (which they cannot),

5    Plaintiffs have failed to allege facts sufficient to sustain a claim under any of the UCL's "prongs."

6          **A.      Plaintiffs Have Not Alleged Injury in Business or Property.**

7          The injury alleged by Plaintiffs—the loss of their Facebook accounts and their associated

8    content and vulnerability to future identity theft, SAC ¶¶ 116-17—is not an "economic injury"

9    sufficient to confer standing under the UCL. Plaintiffs allege that user accounts are economically

10   valuable to Meta, which generates revenue from the sale of ads directed at users, and to other

11   similar internet service companies. *Id.* ¶¶ 120-22. Plaintiffs also allege that Facebook accounts are

12   valuable to the third parties who take them over, as they can sell them on the dark web. *Id.* ¶ 123.

13   Missing however, is any allegation that Plaintiffs' Facebook account had economic value *to*

14   *Plaintiffs*. This is fatal to Plaintiffs' UCL claim. Plaintiffs must allege facts sufficient to show that

15   *they* suffered "economic injury," as opposed to whether the conduct at issue had economic value to

16   a third party. *Huynh* v. *Quora, Inc.*, 2019 WL 11502875, at *7 (N.D. Cal. Dec. 19, 2019) (for the

17   purposes of a UCL injury, "even if Quora may have gained money through its sharing or use of the

18   plaintiffs' information that's different from saying the plaintiffs lost money" (cleaned up)).

19         Plaintiffs must show that the data or information "has economic value to [them]. That the

20   information has external value, but no economic value to plaintiff[s], cannot serve to establish that

21   plaintiff[s] ha[ve] personally lost money or property." *Bass*, 394 F. Supp.3d at 1040 (plaintiff

22   failed to allege economic injury sufficient to plead UCL claim where Facebook allegedly suffered

23   a data breach resulting in the theft of certain users' "access tokens," which allowed the hackers

24   access to the users' Facebook accounts and any shared or connected web applications that utilized

25   the Facebook login system); *see also In re Google Inc. Cookie Placement Consumer Priv. Litig.*,

26   806 F.3d 125, 148-49 (3d Cir. 2015) (plaintiffs failed to plead economic injury from Google's

27   tracking and use of their internet history information because "they allege no facts suggesting they

28   ever participated or intended to participate in the market they identify or that the defendants

1  prevented them from capturing the full value of the internet usage information for themselves").

2  Likewise, for the same reasons discussed *supra* § II.B., Plaintiffs' reference to a loss of the

3  "benefit of the bargain" is insufficient to establish economic injury.

4  **B.    Plaintiffs' Allegations Do Not Establish That Meta's Conduct Is Unlawful.**

5  Even if Plaintiffs were able to allege an economic injury sufficient to bring a UCL claim,

6  they have not sufficiently alleged that Meta's conduct is unlawful. The unlawful prong "borrows

7  violations of other laws and treats them as unlawful practices that the unfair competition law

8  makes independently actionable." *Hadley* v. *Kellogg Sales Co.*, 243 F. Supp. 3d 1074, 1094 (N.D.

9  Cal. 2017) (citation omitted). Plaintiffs assert that their allegations establish a violation of

10 "legislatively-declared public policy that seeks to protect consumers' data and ensure that entities

11 that are trusted with it use appropriate security measures," as reflected in the FTC Act,

12 California's Consumer Records Act, and California's Consumer Privacy Act. SAC ¶ 198.

13 However, "the FTC Act 'does not provide individuals with a private right of action and cannot be

14 used as a predicate for a UCL claim." *In re Sequoia Benefits & Ins. Data Breach Litig.*, 2024 WL

15 1091195, at *8 (N.D. Cal. Feb. 22, 2024) (citation omitted); *see also O'Donnell* v. *Bank of Am.,*

16 *Nat'l Ass'n*, 504 F. App'x 566, 568 (9th Cir. 2013) (same). The same is true for the provision

17 identified by Plaintiffs in California's Consumer Privacy Act (Cal. Civ. Code § 1798.100). *See In*

18 *re Sequoia Benefits & Ins. Data Breach Litig.*, 2024 WL 1091195, at *8.[8] Moreover, Plaintiffs

19 have not alleged how Meta's conduct violates these laws.[9] Plaintiffs' vague reference to these

---

[8] Nor can Plaintiffs base a claim under the unlawful prong of the UCL on an alleged breach of
contract. *See Puentes* v. *Wells Fargo Home Mortg., Inc.*, 160 Cal. App. 4th 638, 645 (2008) (a
breach of contract is not itself an unlawful act for purposes of the UCL).

[9] Although there is a private right of action under the section of California's Consumer Records
Act identified by Plaintiffs (Cal. Civ. Code § 1798.81.5), Plaintiffs have not alleged sufficient
facts to sustain a claim under that provision. For the reasons stated above, they have not suffered
any "actual injury," which is required to bring a claim under California Civil Code § 1798.81.5.
*Antman* v. *Uber Techs., Inc.*, 2018 WL 2151231, at *9-11 (N.D. Cal. May 10, 2018) (theft of
driver's licenses and names, without additional injury, not sufficient injury for a claim under Cal.
Civ. Code § 1798.81.5). Additionally, to allege a claim under California Civil Code § 1798.81.5,
a plaintiff must allege that the defendant did not "comply with industry standards" or that its
"security measures [were] unreasonable by comparison to what other companies are doing."
*Razuki* v. *Caliber Home Loans, Inc.*, 2018 WL 6018361, at *1-2 (S.D. Cal. Nov. 15, 2018).
Plaintiffs have alleged nothing like that. *See Smith* v. *Sabre Corp.*, 2017 WL 11678765, at *5 n.1

1  laws, without any further specificity as to how they are applicable to or were violated by Meta, is

2  insufficient to support a UCL claim under the "unlawful" prong. *Dang* v. *Samsung Elecs. Co.,*

3  *Ltd.*, 2018 WL 11348883, at *7 (N.D. Cal. July 2, 2018) ("Plaintiff's one-sentence reference to

4  the statute is simply insufficient to support a UCL unlawful prong claim."); *Hodges* v. *Apple Inc.*,

5  2013 WL 6698762, at *9 (N.D. Cal. Dec. 19, 2013) (Orrick, J.), *aff'd*, 640 F. App'x 687 (9th Cir.

6  2016) (merely identifying statutes "without stating which part of each statute was violated and

7  how" insufficient for UCL claim under the unlawful prong); *McDonald* v. *Wells Fargo Bank,*

8  *N.A.*, 2013 WL 6512881, at *7 (N.D. Cal. Dec. 12, 2013) ("cursory references to RESPA and

9  TILA violations" are "insufficient to state a claim" under the unlawful prong of the UCL because

10  "they are conclusory statements that do not meet pleading standards").

11    **C.    Plaintiffs' Allegations Do Not Establish That Meta's Conduct Is Fraudulent.**

12    Plaintiffs' UCL claim fails under the "fraudulent" prong as well. The fraudulent prong of

13  the UCL asks whether the conduct at issue is "likely to deceive" and is subject to Federal Rule of

14  Civil Procedure 9(b) pleading standards, which requires plaintiffs to "state with particularity the

15  circumstances constituting fraud or mistake, including the who, what, when, where, and how of

16  the misconduct charged." *Parducci* v. *Overland Sols., Inc.*, 399 F. Supp. 3d 969, 975, 982 (N.D.

17  Cal. 2019) (Orrick, J.) (internal quotations and citation omitted). Plaintiffs bringing a UCL claim

18  also must allege actual reliance. *Perkins* v. *LinkedIn Corp.*, 53 F. Supp. 3d 1190, 1219-20 (N.D.

19  Cal. 2014); *see also Great Pac. Sec.* v. *Barclays Cap., Inc.*, 743 F. App'x 780, 783 (9th Cir. 2018)

20  ("Plaintiffs alleging claims under the . . . UCL are required to plead and prove actual reliance on

21  the misrepresentations or omissions at issue."); *In re Tobacco II Cases*, 46 Cal. 4th 298, 326

22  (2009) (language of Cal. Bus. & Prof. Code § 17204 "imposes an actual reliance requirement on

23  plaintiffs prosecuting a private enforcement action under the UCL's fraud prong."). "Actual

24  reliance under the UCL requires plaintiffs to allege that the defendants' misrepresentation or

25  nondisclosure was an immediate cause of the plaintiffs' injury-producing conduct." *Rojas-Lozano*

26  _____

27  (C.D. Cal. Oct. 23, 2017) (Cal. Civ. Code § 1798.81.5 requires more than "suggest[ing] that any
   time a company is the victim of theft by a third party criminal, security deficiencies must be

28  implied").

1   v. *Google, Inc.*, 159 F. Supp. 3d 1101, 1118 (N.D. Cal. 2016) (internal quotations and citation

2   omitted). Accordingly, to state a claim under the fraudulent prong of the UCL, "plaintiffs must

3   allege with specificity that defendant's alleged misrepresentations: (1) were relied upon by the

4   named plaintiffs; (2) were material; (3) influenced the named plaintiffs' decision to purchase the

5   product; and (4) were likely to deceive members of the public." *Yastrab* v. *Apple Inc.*, 2015 WL

6   1307163, at *6 (N.D. Cal. Mar. 23, 2015) (citation omitted).

7          Plaintiffs' allegations fall short of this exacting standard. Plaintiffs allege that Meta

8   misrepresented that Facebook users can maintain or regain access to their accounts following a

9   takeover. SAC ¶¶ 187, 192. Plaintiffs also allege that Meta misrepresented that Facebook users

10  could revoke the license given to Meta over their content by deleting that content, but that locked-

11  out Facebook users cannot do so. *Id.* ¶ 193-94. For the reasons discussed *supra* Sections I and II.A,

12  Plaintiffs have identified no misrepresentation "likely to deceive members of the public" or

13  otherwise. *See Girard* v. *Toyota Motor Sales, U.S.A., Inc.*, 316 F. App'x 561, 563 (9th Cir. 2008)

14  ("reasonable consumers would not be deceived by" advertisements that "include[d] numerous

15  eligibility disclaimers"); *Dinan* v. *SanDisk LLC*, 2020 WL 364277, at *7 (N.D. Cal. Jan. 22, 2020)

16  ("[T]he Ninth Circuit and district courts therein have held that allegations do not satisfy the

17  reasonable consumer test where the packaging containing the alleged misrepresentation includes

18  disclosures that makes the meaning of the representation clear."); *In re Sony Gaming Networks &*

19  *Customer Data Sec. Breach Litig.*, 903 F. Supp. 2d 942, 968 (S.D. Cal. 2012) (terms of service not

20  likely to deceive reasonable consumer who suffered service outage where terms of service did not

21  represent that console owners could "always" access the internet or other online services, but

22  rather explicitly disclaimed "continuous and uninterrupted" access). Moreover, Plaintiffs'

23  assertions are undermined by Plaintiffs' own allegations. Even though Plaintiffs claim they were

24  unsuccessful, they acknowledge that Meta does, in fact, offer "account retrieval steps [through]

25  Meta's computer-based customer support system." SAC ¶¶ 16, 18; *see also id.* ¶¶ 50, 63, 89-90,

26  102. Nowhere does Meta guarantee what the steps will be or that they will, in fact, be successful.

27          Furthermore, Plaintiffs do not allege that they relied on any of Meta's alleged

28  misrepresentations, that they were material, or that they influenced their decisions to create a

1    Facebook account. Despite amending the original pleading, Plaintiffs still do not even assert that

2    they read Meta's alleged misrepresentations—they claim only that they relied on their "belief that

3    Meta would maintain the security of their accounts," their "belief that permitting Meta to access

4    [their personal] data [was] in exchange for the ability to use the Facebook platform," and their

5    "belief that they could revoke any license given to Meta for content they posted." *Id.* ¶¶ 192-94.

6    But Plaintiffs' "belief" is insufficient to maintain a UCL claim for fraudulent representation. *See*

7    *Rojas-Lozano*, 159 F. Supp. 3d at 1114, 1119 (plaintiff failed to allege reliance for UCL claims

8    where "she has not even alleged what representations she encountered, let alone that she relied

9    upon them"); *Frenzel* v. *AliphCom*, 76 F. Supp. 3d 999, 1014-15 (N.D. Cal. 2014) (Orrick, J.)

10   (dismissing UCL claim where plaintiff did "not identify which particular label representations [he]

11   personally read and relied on" or "how long before the purchase his review occurred"); *In re*

12   *iPhone Application Litig.*, 6 F. Supp. 3d 1004, 1018 (N.D. Cal. 2013) (granting summary judgment

13   where there was no evidence that any plaintiff "even saw, let alone read and relied upon, the

14   alleged misrepresentations").[10]

15           **D.      Plaintiffs' Allegations Do Not Establish That Meta's Conduct Is Unfair.**

16           Plaintiffs' claims also fail under the "unfair" prong of the UCL. "[T]his district has held

17   that 'where the unfair business practices alleged under the unfair prong of the UCL overlap

18   entirely with the business practices addressed in the fraudulent and unlawful prongs of the UCL,

19   the unfair prong of the UCL cannot survive if the claims under the other two prongs of the UCL do

20   not survive.'" *NorthBay Healthcare Grp.-Hosp. Div.* v. *Blue Shield of Cal. Life & Health Ins.*, 342

21   F. Supp. 3d 980, 988-89 (N.D. Cal. 2018) (Orrick, J.) (quoting *Hadley*, 243 F. Supp. 3d at 1104-

22   05; *Hammerling* v. *Google LLC*, 615 F. Supp. 3d 1069, 1094 (N.D. Cal. 2022). That is the case

23   here. Plaintiffs' claims under the unfair prong are based on the same conduct as Plaintiff's claims

24   under the unlawful and fraudulent prongs, which both fail. *See* SAC ¶¶ 196-97 (basing "unfair"

25

26   _____

     [10] Plaintiffs vaguely allude to "omissions." SAC ¶¶ 187, 192, 195-97. However, to state a claim
27   under the fraudulent prong of the UCL based on an omission, plaintiffs must identify a fact that
     the defendant has an "affirmative duty to disclose." *Hodsdon* v. *Mars, Inc.*, 891 F.3d 857, 866
28   (9th Cir. 2018). Plaintiffs have identified no such affirmative duty.

1    prong claims on Meta's "actions and omissions, as described in detail *supra*" with respect to its

2    claims under the "fraudulent" prong). Plaintiffs' claim under the unfair prong therefore also fails.

3    Moreover, Plaintiffs' claim under the unfair prong cannot be based on Meta's alleged breach of

4    contract. *See Textron Fin. Corp.* v. *Nat'l Union Fire Ins. Co.*, 118 Cal. App. 4th 1061, 1072

5    (2004), *disapproved on another ground in Zhang* v. *Superior Court*, 57 Cal. 4th 364, 382 (2013)

6    ("[R]eliance on general common law principles to support a cause of action for unfair competition

7    is unavailing.").

8           Even if Plaintiffs could overcome these threshold issues, Plaintiffs' claim would still fail.

9    The Ninth Circuit evaluates unfairness in consumer actions under two tests: the "balancing test"

10   and the "tethering test."[11] *Hadley*, 243 F. Supp. 3d at 1104. The balancing test asks "whether the

11   alleged business practice is immoral, unethical, oppressive, unscrupulous or substantially injurious

12   to consumers and requires the court to weigh the utility of the defendant's conduct against the

13   gravity of the harm to the alleged victim." *Drum* v. *San Fernando Valley Bar Ass'n*, 182 Cal. App.

14   4th 247, 257 (2010). Meta's business practices are not unfair under the balancing test. Courts are

15   unwilling to recognize unfairness where, as here, consumers knew the truth regarding the relevant

16   transaction.. *S. Bay Chevrolet* v. *Gen. Motors Acceptance Corp.*, 72 Cal. App. 4th 861, 887-88

17   (1999) (finding that lender's interest calculation practices were not unfair because the borrower

18   was aware of them and they were widely used); *see also Davis* v. *HSBC Bank Nev., N.A.*, 691 F.3d

19   1152, 1168-69 (9th Cir. 2012) (challenged business practice not against public policy, immoral,

20   unethical, oppressive, or unscrupulous where possibility of alleged injury was disclosed and

21   reasonably avoidable). As described above, the TOS make clear that uninterrupted access to

22   Facebook accounts was not guaranteed—Meta "ma[d]e no guarantees that [its services] w[ould] be

23   safe, secure, or error-free, or that they w[ould] function without disruptions, delays, or

24   imperfections" and explicitly disclaimed all warranties. Ex. 1 (TOS 7/26/2022) at 15; Ex. 5 (TOS

25

_____

26   [11] As applied to consumer suits, the Ninth Circuit rejected a third approach, the "FTC test," which
     is based on a three-pronged test contained in the FTC Act. *See Amacker* v. *Bank of Am.*, 2014 WL
27   4771668, at *10 (N.D. Cal. Sept. 24, 2014). Plaintiffs do not allege that Meta's business practices
     were unfair under the FTC test. *See* SAC ¶¶ 196-97.
28

1/5/2025) at 10. Moreover, Plaintiffs frame the challenged business practice as the withholding of accounts for class members and make the conclusory assertion that this "cannot be said to have had any utility at all." SAC ¶ 196. But Plaintiffs ignore the larger framework that must be considered and "balanced." Meta seeks to promote the safety and security of Facebook (and its user base) as a whole and employs automated processes that facilitate its ability to service its billions of users, who are located in time zones across the globe.

Under the second approach, the "tethering test," plaintiffs must plead that a practice violates public policy "tethered to specific constitutional, statutory, or regulatory provisions." *Drum*, 182 Cal. App. 4th at 257. Plaintiffs fail to tether the business conduct they complain about to any specific constitutional, statutory, or regulatory provisions. Instead, they allege that Meta's "actions and omissions, as described in detail *supra*, violated fundamental public policies expressed by the California Legislature and the Federal Trade Commission." SAC ¶ 197. Invoking general "fundamental public policies" does not satisfy the test, which requires tethering the claimed harm to "*specific* constitutional, statutory, or regulatory provisions." *See Hodsdon* v. *Mars., Inc.*, 162 F. Supp. 3d 1016, 1027 (N.D. Cal. 2016), *aff'd*, 891 F.3d 857 (9th Cir. 2018) (emphasis added); *see also Hodges*, 2013 WL 6698762, at *9 ("vague allusions to deceit, consumer protection, and unfair competition" insufficient under unfair prong). Nor can the references to the FTC Act, California's Consumer Records Act, or California's Consumer Privacy Act in connection with Plaintiffs' "unlawful" claim save their "unfair" claim. *See Baba* v. *Hewlett-Packard Co.*, 2010 WL 2486353, at *8 (N.D. Cal. June 16, 2010) ("[C]ursorily listing the same string of statutes as were associated with the 'unlawful' prong" in a "single paragraph" and "alleging vaguely" that the conduct complained of violates public policy is so "inadequa[te]" that it "necessitates dismissal.").

## V.    **PLAINTIFFS FAIL TO PLEAD UNJUST ENRICHMENT (COUNT IV).**

Plaintiffs' alternative claim for unjust enrichment must be denied for several independent reasons. ***First***, at the outset, because Plaintiffs' claims for breach of contract, breach of the implied covenant, and violation of the UCL fail, so too does their claim for unjust enrichment. *See In re Actimmune Mktg. Litig.*, 2009 WL 3740648, at *16 (N.D. Cal. Nov. 6, 2009), *aff'd*, 464 F. App'x

1  651 (9th Cir. 2011) ("[C]ourts routinely dismiss unjust enrichment claims where a plaintiff cannot

2  assert any substantive claims against a defendant.").

3  **Second**, Plaintiffs cannot bring an unjust enrichment claim—which sounds in quasi-

4  contract—because the relationship between Plaintiffs and Meta is governed by an express

5  contract—the TOS. *Zepeda*, 777 F. Supp. 2d at 1223 (dismissing unjust enrichment claims

6  because "a valid express contract exists between the parties that covers the subject matter at

7  issue"). "[A] plaintiff may not plead the existence of an enforceable contract and maintain a quasi-

8  contract claim at the same time, unless the plaintiff has pled facts suggesting the contract may be

9  unenforceable or invalid." *Schulz* v. *Cisco Webex, LLC*, 2014 WL 2115168, at *5 (N.D. Cal. May

10  20, 2014); *see also Udo* v. *Wells Fargo Bank, N.A.*, 2023 WL 8600791, at *4 (N.D. Cal. Dec. 12,

11  2023) (dismissing unjust enrichment claim where plaintiff alleged "that the parties had a

12  contractual relationship" but failed "to plead facts to show any express contract that exists was

13  unenforceable or void"). Plaintiffs do not allege that the TOS are unenforceable or invalid. To the

14  contrary, Plaintiffs' unjust enrichment claim is expressly based on terms in Meta's TOS. *See* SAC

15  ¶¶ 207-08, 210. This requires dismissal. *See Schulz*, 2014 WL 2115168, at *5; *see also World*

16  *Surveillance Grp., Inc.* v. *La Jolla Cove Invs., Inc.*, 2014 WL 1411249, at *2 (N.D. Cal. Apr. 11,

17  2014) (dismissing unjust enrichment claim because plaintiff explicitly pleaded the existence of

18  enforceable agreements between the parties).

19  **Third**, Plaintiffs have not adequately pleaded that Meta was "*unjustly* conferred a benefit

20  through mistake, fraud, coercion, or request." *Russell* v. *Walmart, Inc.*, 680 F. Supp. 3d 1130,

21  1133 (N.D. Cal. 2023) (emphasis in original; internal quotations and citation omitted). An unjust

22  enrichment claim based on fraud must conform to Rule 9(b)'s heightened pleading standards. *In re*

23  *Actimmune Mktg. Litig.*, 2009 WL 3740648, at *16. For the reasons described above, *see supra*

24  § IV.C., Plaintiffs fail to plead fraud with any particularity. Nor do Plaintiffs allege any facts to

25  demonstrate the existence of "mistake, coercion, or request."

26  **CONCLUSION**

27  The Court should dismiss the Second Amended Complaint in its entirety with prejudice.

28

1

2
Dated: July 17, 2025

PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP

3

4

5

6

7

8

By: /s/ *Walter F. Brown, Jr.*
   Walter F. Brown Jr. (SBN: 130248)
   wbrown@paulweiss.com
   **PAUL, WEISS, RIFKIND, WHARTON**
   **& GARRISON LLP**
   535 Mission Street, 25th Floor
   San Francisco, CA 94105
   Telephone: (628) 432-5100
   Facsimile:  (628) 232-3101

9

10

11

12

Melissa F. Zappala
mzappala@dirllp.com
**DUNN ISAACSON RHEE LLP**
401 9th Street NW
Washington, DC 20004
Telephone: (202) 240-9700
Facsimile: (202) 240-2050

13

14

15

16

Meredith R. Dearborn (SBN: 268312)
mdearborn@dirllp.com
**DUNN ISAACSON RHEE LLP**
345 California Street, Suite 600
San Francisco, CA 94104
Telephone: (202) 240-2900

17

18

*Attorneys for Defendant Meta Platforms, Inc.*

19

20

21

22

23

24

25

26

27

28