Annick M. Persinger (State Bar No. 272996)
**TYCKO & ZAVAREEI LLP**
1970 Broadway, Suite 1070
Oakland, California 94612
Telephone: (510) 254-6808
Facsimile: (202) 973-0950
*apersinger@tzlegal.com*

Hassan A. Zavareei (State Bar No. 181547)
Gemma Seidita (State Bar No. 322201)
**TYCKO & ZAVAREEI LLP**
2000 Pennsylvania Avenue, Northwest, Suite 1010
Washington, District of Columbia 20006
Telephone: (202) 973-0900
Facsimile: (202) 973-0950
*hzavareei@tzlegal.com*
*gseidita@tzlegal.com*

*Attorneys for Plaintiffs and the Putative Class*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SARA ISGUR, ERIK BRAND, EDDIE EDWARDS, LINDA METZLER, and RICHARD REPP individually and on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>META PLATFORMS, INC.,<br><br>Defendant. | Case No. 3:24-cv-06559-WHO<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS SECOND AMENDED CLASS ACTION COMPLAINT**<br><br>Date: October 15, 2025<br>Time: 2:00 p.m. PDT<br>Courtroom: 2 (17th Floor)<br>Judge: Hon. William H. Orrick |

# TABLE OF CONTENTS

I.      INTRODUCTION ..................................................................................................................1

II.     LEGAL STANDARD ...........................................................................................................3

III.    BACKGROUND ...................................................................................................................3

IV.     ARGUMENT ........................................................................................................................4

      A.     Plaintiffs State a Claim for Breach of Contract ......................................................4

           1.     Meta's TOS Do Not Preclude Plaintiffs' Contract
               Claims ..............................................................................................4

           2.     Plaintiffs have alleged a contractually enforceable
               promise ............................................................................................7

           3.     Plaintiffs sufficiently allege injury from Meta's breach
               of contract ..................................................................................... 10

           4.     Plaintiffs adequately state their claims for breach of
               the covenant of good faith and fair dealing ................................... 14

           5.     Plaintiffs sufficiently allege quasi-contract, unjust
               enrichment ..................................................................................... 18

      B.     Plaintiffs State a Claim for Violation of the UCL ................................................ 18

           1.     Plaintiffs have standing to bring their UCL claim ........................... 18

           2.     Plaintiffs state a claim under the unlawful prong of
               the UCL. ......................................................................................... 20

           3.     Plaintiffs state a claim under the fraudulent prong of
               the UCL ......................................................................................... 21

           4.     Plaintiffs state a claim under the unfair prong of the
               UCL ............................................................................................... 24

V.      CONCLUSION ................................................................................................................... 25

1

**TABLE OF AUTHORITIES**

2

**Cases** **Page(s)**

3

*In re Adobe Sys., Inc. Priv. Litig.,*
4   66 F. Supp. 3d 1197 (N.D. Cal. 2014) ................................................. 24

5

*Advanced Risk Managers, LLC v. Equinox Management Group, Inc.,*
   No. 19-cv-03532-DMR, 2021 WL 4243400 (N.D. Cal. Sept. 17, 2021) ......................... 10
6

*Aguilera v. Pirelli Armstrong Tire Corp.,*
7   223 F.3d 1010 (9th Cir. 2000)................................................. 10

8  *In re Anthem Inc. Data Breach Litig.,*
   No. 15-MD-02617-LHK, 2016 WL 3029783 (N.D. Cal. May 17, 2016) ................... 19, 20
9

*Ashcroft v. Iqbal,*
10   556 U.S. 662 (2009) ................................................................. 3

11 *Backus v. Gen. Mills, Inc.,*
   122 F. Supp. 3d 909 (N.D. Cal. 2015) ................................................. 20
12

13 *Bass v. Facebook,*
   394 F. Supp. 3d 1024 (N.D. Cal. 2019) ..................................... 5, 19, 20
14

*Bayol v. Zipcar, Inc.,*
15   78 F. Supp. 3d 1252 (N.D. Cal. 2015) ..................................... 11, 12

16 *Calhoun v. Google LLC,*
   526 F. Supp. 3d 605 (N.D. Cal. 2021) ..................................... 15, 19
17

18 *Celador Int'l, Ltd. v. Walt Disney Co.,*
   347 F. Supp. 2d 846 (C.D. Cal. 2004) ..................................... 14, 15, 16
19

*CoStar Grp., Inc. v. Com. Real Estate Exch., Inc.,*
20   141 F.4th 1075 (9th Cir. 2025) ................................................. 20

21 *Cousins v. Lockyer,*
   568 F.3d 1063 (9th Cir. 2009) ..................................................... 3
22

23 *Daly v. United Health Ins. Co.,*
   No. 10–CV–03032–LHK, 2010 WL 4510911 (N.D. Cal. Nov. 1, 2010) .................. 15, 17

24 *Damner v. Facebook, Inc.,*
   No. 20-cv-05177-JCS, 2020 WL 7862706 (N.D. Cal. Dec. 31, 2020) ........................ 6
25

26 *Dang v. Samsung Electronics Co.,*
   No. 14-CV-00530-LHK, 2018 WL11348883 (N.D. Cal. Jul. 2, 2018) ........................ 21
27

28 *Davis v. HSBC Bank Nev.,*
   NA, 691 F.3d 1152 (9th Cir. 2012) ................................................. 24

ii

*Doe v. Meta Platforms, Inc.*,
    690 F. Supp. 3d 1064 (N.D. Cal. 2023) ............................................................ *passim*

*In re Easysaver Rewards Litig.*,
    737 F. Supp. 2d 1159 (S.D. Cal. 2010) ....................................................... 14, 15

*Elation Sys., Inc. v. Fenn Bridge LLC*,
    71 Cal. App. 5th 958 (Cal. Ct. App. 2021) ....................................................... 10

*Ellsworth v. U.S. Bank, N.A.*,
    908 F.Supp.2d 1063 (N.D. Cal. 2012) .............................................................. 17

*Ellsworth v. U.S. Bank, N.A.*,
    30 F. Supp. 3d 886 (N.D. Cal. 2014) ................................................................ 18

*Epic Games, Inc. v. Apple, Inc.*,
    67 F.4th 946 (9th Cir. 2023) ............................................................................. 24

*ESG Cap. Partners, LP v. Stratos*,
    828 F.3d 1023 (9th Cir. 2016) .......................................................................... 18

*In re Facebook Priv. Litig.*,
    192 F. Supp. 3d 1053 (N.D. Cal. 2016) ...................................................... 10, 11

*In re Facebook Priv. Litig.*,
    572 F. App'x 494 (9th Cir. 2014) ..................................................................... 18

*In re Facebook, Inc., Consumer Priv. User Profile Litig.*,
    402 F. Supp. 3d 767 (N.D. Cal. 2019) ...................................................... 15, 16, 18, 20

*Free Range Content, Inc. v. Google Inc.*,
    No. 14-cv-02329-BLF, 2016 WL 2902332 (N.D. Cal. May 13, 2016) ............ 12

*In re Google Inc. Cookie Placement Consumer Priv. Litig.*,
    No. 13-4300, 2014 WL 580660 (3d Cir. Feb. 5, 2014) ................................... 19

*In re Google RTB Privacy Litig.*,
    606 F. Supp. 3d 935 (N.D. Cal. June 13, 2022) .............................................. 16

*Grouse River Outfitters Ltd. v. Oracle Corp.*,
    No. 16-cv-02954-LB, 2018 WL 6099783 (N.D. Cal. Nov. 21, 2018) ............. 13

*Hadley v. Kellogg Sales Co.*,
    243 F. Supp. 3d 1074 (N.D. Cal. 2017) ............................................................ 20

*Hahn v. Massage Envy Franchising, LLC*,
    No. 12CV153 DMS BGS, 2014 WL 5100220 (S.D. Cal. Sept. 25, 2014) ....... 12

*Hodges v. Apple, Inc.*,
    No. 13–cv–01128–WHO, 2013 WL 6698762 (N.D. Cal. Dec. 19, 2023) ........ 21

iii

*Hodsdon v. Mars, Inc.*,
  891 F.3d 857 (9th Cir. 2018) .................................................................................... 22, 24

*JH Kelly, LLC v. AECOM Tech. Servs., Inc.*,
  No. 20-cv-05381-HSG, 2022 WL 195648 (N.D. Cal. Jan. 21, 2022) ............................... 15

*Johnson* v. *Microsoft Corp.*,
  No. C06-0900RSM, 2007 WL 2404844 (W.D. Wash. Aug. 17, 2007) ............................. 13

*Karl v. Zimmer Biomet Holdings, Inc.*,
  No. C 18-04176 WHA, 2019 WL 2775567 (N.D. Cal. July 2, 2019) ................................ 7

*Kennedy v. Meta Platforms Inc.*,
  2025 WL 1935433 (N.D. Cal. June 5, 2025) ................................................................ 6

*Kennedy v. Meta Platforms, Inc.*,
  No. 23-cv-06615-HSG, 2024 WL 4565091 (N.D. Cal. Oct. 23, 2024) ............................. 6

*King v. Facebook, Inc.*,
  No. 19-cv-01987-WHO, 2019 WL 6493968 (N.D. Cal. Dec. 3, 2019) .............................. 6

*Kwikset Corp. v. Super. Ct.*,
  51 Cal. 4th 310 (Cal. 2011) .................................................................................. 18, 19

*Lloyd v. Facebook, Inc.*,
  No. 21-cv-10075-EMC, 2022 WL 4913347 (N.D. Cal. Oct. 3, 2022) .............................. 9

*Long v. Dorset*,
  369 F. Supp. 3d 939 (N.D. Cal. 2019) ..................................................................... 7, 9

*Lundy v. Facebook Inc.*,
  No. 18-cv-06793-JD, 2021 WL 4503071 (N.D. Cal. Sept. 30, 2021) ............................ 4, 10

*In re MacBook Keyboard Litig.*,
  No. 5:18-cv-02813-EJD, 2019 WL 1765817 (N.D. Cal. Apr. 22, 2019) ...................... 22, 23

*In re Marriott Int'l, Inc., Cust. Data Sec. Breach Litig.*,
  440 F. Supp. 3d 447 (D. Md. 2020) ......................................................................... 19

*McDonald v. Wells Fargo Bank, N.A.*,
  No.: CV 13-02334-KAW, 2013 WL 6512881 (N.D. Cal. Dec. 12, 2013) ........................ 21

*McGuire v. More-Gas Invs.*,
  LLC, 220 Cal. App. 4th 512 (Cal. Ct. App. 2013) ...................................................... 13

*Moates v. Facebook*,
  No. 22-cv-04478-RFL, 2024 WL 2853976 (N.D. Cal. Apr. 3, 2024) .............................. 6

*Moore v. Wells Fargo Bank, N.A.*,
  39 Cal. App. 5th 280 (Cal. App. Ct. 2019) ............................................................... 17

*Oracle Corp. v. SAP AG,*
    No. C 07-1658 PJH, 2008 WL 5234260 (N.D. Cal. Dec. 15, 2008) ............................ 18

*Ramirez v. Bank of Am., N.A.,*
    607 F. Supp. 3d 969 (N.D. Cal. 2022) ..................................................................... 18

*Regueiro v. FCA US, LLC,*
    671 F. Supp. 3d 1085 (C.D. Cal. 2023) .................................................................... 25

*Rollins v. Dignity Health,*
    338 F. Supp. 3d 1025 (N.D. Cal. 2018) .................................................................... 18

*Ruiz v. Gap, Inc.,*
    380 F. App'x 689 (9th Cir. 2010) ............................................................................ 10

*S. Bay Chevrolet v. Gen Motors Acceptance Corp.,*
    72 Cal. App. 4th 861 (Cal. Ct. App. 1999) ............................................................. 24

*Salari v. Walt Disney Parks and Resorts U.S., Inc.,*
    No. SACV 23-01406-CJC (DFMx), 2023 WL 11983325 (C.D. Cal. Aug. 28,
    2023) ....................................................................................................................... 16

*Schmitt v. SN Servicing Corp.,*
    No. 21-cv-03355-WHO, 2021 WL 5279822 (N.D. Cal. Nov. 12, 2021) ...................... 20

*Sepanossian v. Nat'l Ready Mixed Concrete Co.,*
    97 Cal. App. 5th 192 (Cal. Ct. App. 2023) .............................................................. 25

*Shared.com v. Meta Platforms, Inc.,*
    No. 22-cv-02366-RS, 2022 WL 4372349 (N.D. Cal. Sept. 21, 2022)............................5

*Teague v. Biotelemetry, Inc.,*
    No. 16-cv-06527-TSH, 2018 WL 5310793 (N.D. Cal. 2018) .................................. 15, 17

*W. Union Tel. Co. v. Nester,*
    309 U.S. 582 (1940) ................................................................................................. 13

*Wozniak v. YouTube LLC,*
    100 Cal. App. 5th 893 (Cal. Ct. App. 2024) ..............................................................9

*In re Yahoo! Inc. Cust. Data Sec. Breach Litig.,*
    No. 16-MD-02752-LHK, 2017 WL 3727318 (N.D. Cal. Aug. 30, 2017) ...................... 19

**Statutes**

Cal. Bus. & Prof. Code §§ 17200 *et seq.* ...................................................... 2, 19

Cal. Civ. Code § 1798 .......................................................................................... 21

Cal. Civ. Code § 3360 .......................................................................................... 10

v

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS SECOND AMENDED CLASS ACTION COMPLAINT
CASE NO. 3:24-CV-06559-WHO

## I.    INTRODUCTION

In its Motion to Dismiss, Meta argues that Plaintiffs are trying to hold Meta liable for the conduct of third-party bad actors who hacked their accounts. Not so. This case is about Meta's unlawful conduct. Plaintiffs licensed their personal information, including photos, stories and other posts to Meta in exchange for the right to use the Meta platform for their personal use. Meta then monetized that license and profited from it by using the licensed material to sell advertisements. The problem is that when Plaintiffs' accounts were hacked, Meta failed to restore access or even suspend the hacked accounts, but it continued to exploit the license Plaintiffs had given Meta. So, while Meta still has the benefit of Plaintiffs' personal information, Plaintiffs and users like them no longer have their personal information, no longer have the benefit of their bargain as they do not have use of their accounts, and cannot even gain entry to revoke Meta's license. This is an express breach of Meta's Terms of Service ("TOS"), which are contracts of adhesion. For its breach, Meta owes Plaintiffs and users like them the $100 fixed in the liquidated damages provision of the TOS, or nominal damages. Alternatively, Plaintiffs allege that they are entitled to a disgorgement of profits resulting from Meta's unjust enrichment through its continued monetization of their property interest in their personal information that they lost access to.

Meta also breaches the covenant of good faith and fair dealing by frustrating the essential purpose of the service contract. Meta had the discretion to restore or suspend Plaintiffs accounts. By failing to do so while it generates profits from the hijacked accounts, Meta did not fulfill its obligation to exercise that discretion in good faith while frustrating the purpose of the contract. In addition, the TOS provide that the only way for Plaintiffs to cancel the license they provided to Meta is to delete the content in their accounts. But, by denying the Plaintiffs access to their hacked accounts, Meta prevents Plaintiffs from being able to exercise that right.

Meta argues that it is not liable because it "does not (and could not) contractually guarantee users that they will always enjoy uninterrupted access to their Facebook accounts" and it is not obligated to restore access. That is a straw horse argument. Plaintiffs are not seeking uninterrupted access. It is an unlawful affirmative act by Meta to maintain and continue to profit from a license to use Plaintiffs' and users' personal information while Plaintiffs and users do not have access to their

1    own personal information or the ability to revoke the license. *See, e.g.*, ECF 37 Second Am. Compl.

2    ("SAC") at ¶ 40. Based on this affirmative conduct by Meta, Plaintiffs allege that Meta breaches its

3    TOS, the covenant of good faith and fair dealing, violates California's Unfair Competition Law (the

4    "UCL"), Cal. Bus. & Prof. Code §§ 17200 *et seq.*, and that Meta was unjustly enriched.

5         Meta also argues that "Plaintiffs seek to obligate Meta to restore access even though the TOS

6    explicitly disclaims any such obligation." This too is wrong. While restoring access might be one option

7    Meta could take to mitigate its breach by using a license and profiting from personal information while

8    Plaintiffs and users do not have access, Meta could also revoke its own license, shut down the

9    accounts, and send Plaintiffs the lost personal information that Meta has stored that Plaintiffs and

10   users turned over in exchange for use of the accounts. *See, e.g.*, SAC ¶¶ 35-37 on p. 12-13[1], 177.

11        Meta's conduct of omitting that it would keep its license and continue to use Plaintiffs'

12   and class members' personal information after their accounts were inaccessible violates the UCL.

13   Based on Meta's omissions, when Plaintiffs agreed to hand over their personal information to Meta

14   for it to monetize in exchange for access to the platform, Plaintiffs could not reasonably expect

15   that Meta would keep their licenses after Plaintiffs and users lost access to their personal information

16   and would have acted differently had they known. Meta's maintenance of its license to use this

17   information also allows hackers to defraud Plaintiffs' and users' connections to steal their money.

18   SAC ¶ 117. Plaintiffs also allege that, here, they have lost personal property, including a repository

19   of photos, memories, posts, business and personal connections that exist nowhere else (SAC ¶

20   116), on the one hand, and that this personal property has been acquired and kept by Meta, on the

21   other, to Meta's unfair profit—entitling them to restitutionary disgorgement. Additionally, Plaintiffs

22   also sufficiently allege violations of the unlawful and unfair prongs of the UCL, as detailed below.

23   Thus, under the UCL, Plaintiffs are entitled to both restitution of Meta's ill-gotten gains, and

24   injunctive relief.

25

26

_____

27   [1] Due to a scrivener's error, the SAC has a numbering issue where two sets of substantively different paragraphs unfortunately have the same numbering—¶¶ 35-38 on pages 12-14 appear twice but with substantively different statements. Paragraphs 35-38 on pages 12-13, along with paragraphs 32-34,

28   discuss the terms of Meta's TOS, and paragraphs 35-38 on pages 13-14 discuss Meta's breach.

## II.   LEGAL STANDARD

In ruling on a motion to dismiss under Federal Rules of Civil Procedure Rule 12(b)(6), the Court must take all allegations of material fact as true and construe them in the light most favorable to Plaintiffs. *Cousins v. Lockyer*, 568 F.3d 1063, 1067-68 (9th Cir. 2009). The complaint need not "contain detailed factual allegations," but only allege "enough facts to state a claim to relief that is plausible on its face." *Cousins*, 568 F.3d at 1067-68. Facial plausibility is satisfied when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## III.   BACKGROUND

Meta owns and operates Facebook, one of the most popular social media platforms that has a userbase of billions of people. SAC ¶ 1. Meta is the unilateral author of its adhesive TOS, which Meta states governs the relationship between Facebook users and itself. *Id.* ¶ 32. Meta expressly details the value exchange between Meta and its users. Rather than paying cash to Meta to use Facebook, Plaintiffs and users paid Meta with their personal information, which is worth millions to Meta:

> Instead of paying to use Facebook and the other products and services we offer, by using the Meta Products, covered by these Terms, you agree that we can show you personalized ads and other commercial and sponsored content that businesses and organizations pay us to promote on and off Meta Company Products. We use your personal data such as information about your activity and interests, to show you personalized ads and sponsored content that maybe more relevant to you.

ECF 40 ("Mot.") Ex 1 at 5-6; *Id.* Ex. 5 at 4; SAC ¶ 32. Meta receives a worldwide royalty-free license over all content that users "post or upload," that will not end until the user deletes the content. And Meta promised Plaintiffs that they can delete that content at any time to cancel the license:

> [W]hen you share, post, or upload content . . . you grant us a non-exclusive, transferable, sub-licensable, royalty-free, and worldwide license to host, use distribute, modify, run, copy, publicly perform or display, translate and create derivative works of your content. . . This license will end when your content is deleted from our system . . . **You can delete individual content you share, post, and upload at any time** . . . **this license will continue until the content has been fully deleted**.

*Id.* (emphasis added). Meta further promises, for example, to provide services and to combat harmful and unlawful behavior:

> We employ dedicated teams around the world, work with external service, partners, and other relevant entities . . . to detect potential misuse of our Products, harmful conduct towards

others, and situations where we may be able to help support or protect our community. If we learn of content or conduct like this, we will take appropriate action – for example . . . removing content, blocking access to certain features, disabling an account, or contacting law enforcement.

We . . . develop advanced technical systems to detect potential misuse of our Products, harmful conduct towards others, and situations where we may be able to help support or protect our community. If we learn of content or conduct like this, we will take appropriate action – for example . . . removing content, blocking access to certain features, disabling an account, or contacting law enforcement.

(SAC ¶¶ 35 at p. 12, 152). As such, Meta has the sole ability to address account recovery from potential misuse. *Id.* ¶ 37 at p.13. Despite its promises, after hackers accomplish an account takeover Meta does not actually offer reasonable means to allow users in regaining access to their accounts—or to cancel the license by deleting the content. *Id.* ¶ 35 at p. 13. Instead, Meta allows hackers to continue their access to misappropriated user accounts. *Id.* To make matters worse, Meta laid off thousands of employees concentrated in the customer service and support communities, abandoning users to ineffective automated support systems that have already been shown to cause cascading harms to victims, leaving users with no recourse. *Id.* ¶ 36 at p. 13. So, Meta still profits from the personal data of the users who are locked out. All the while its users are deprived of the benefit of the bargain because they cannot use the platform or revoke the license by deleting their content. *Id.* ¶ 40

## IV.    ARGUMENT

### A.    Plaintiffs State a Claim for Breach of Contract

#### 1.    *Meta's TOS Do Not Preclude Plaintiffs' Contract Claims*

Meta argues that it cannot be held liable for breach of contract, breach of implied covenant, and unjust enrichment because it purports to have as disclaimed liability for any lost information or data in its TOS. Meta is wrong. That same disclaimer clause has been analyzed and rejected by this Court, and several breach of contract claims against Meta have been successfully brought in this district. *See Doe v. Meta Platforms, Inc.*, 690 F. Supp. 3d 1064, 1084-85 (N.D. Cal. 2023) (observing that "courts in this district have allowed breach of contract claims to continue against Facebook despite the limitation of liability clause"); *Lundy v. Facebook Inc.*, No. 18-cv-06793-JD, 2021 WL 4503071, at *2 (N.D. Cal. Sept. 30, 2021) (finding that the damages element of plaintiffs' contract and quasi-contract claims that seek disgorgement and nominal damages are not covered by the limitation of liability

4

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS SECOND AMENDED CLASS ACTION COMPLAINT
CASE NO. 3:24-CV-06559-WHO

provision Facebook points and that nominal damages may be recovered for a breach); *Shared.com v. Meta Platforms, Inc.*, No. 22-cv-02366-RS, 2022 WL 4372349, at *4 (N.D. Cal. Sept. 21, 2022) (allowing contract and other claims to proceed past motion to dismiss stage despite limitation of liability clause).

In *Doe*, this Court denied Meta's motion to dismiss similar claims to Plaintiffs' claims in this case—finding that the plaintiffs had plausibly alleged that Meta breached its sufficiently definite contractual promises when it acquired their health information when they used Meta Pixel patient portals and then monetized it for use in targeted advertising on its platforms. The contractual provisions that this Court found sufficiently definite and plausibly alleged to have been breached included, for example, a promise to "employ dedicated teams around the world … to detect potential misuse of our Products, harmful conduct towards others, and situations where we may be able to support or protect our community." *Doe*, 690 F. Supp. 3d at 1085.  Plaintiffs here allege that Meta breached some of the exact same terms that this Court determined were sufficiently definite. *Compare id.* at 1085 *with* SAC ¶¶ 35 at p. 12, 152.

In *Doe*, as it does here, Meta claimed the clause limited its liability, relying on *Bass v. Facebook*, 394 F. Supp. 3d 1024, 1037-38 (N.D. Cal. 2019). While *Bass* held that the limitation of liability in its TOS precluded claims grounded in breach of contract, in *Doe*, this Court distinguished *Bass*—finding that breach of contract claims are not limited by Meta's TOS when damages are sought for alleged intentional conduct. Specifically, in *Doe*, this Court agreed with plaintiff that Meta's attempt to limit liability runs afoul of California Civil Code § 1668, which comes into play for a breach of contract when defendant commits an intentional act. *Doe*, 690 F. Supp. 3d at 1084. As such, the Court distinguished *Bass* as focusing only on the negligent data breach rather than the intentional refusal by Meta to stop data transfer or employe stronger filtering on its patient portals. *Id.*

Here, *Bass* is similarly distinguishable. As in *Doe*, Plaintiffs allege intentional conduct by Meta—including its refusal to help users recover their accounts or employ a strong mechanism to allow for that recovery, or even to suspend the accounts, while at the same time it maintained its license over the users' accounts and continued to monetize users' personal information. SAC ¶¶ 4, 32-34, 35-38 pp. 12-14, 39-44, 177 (alleging intentional act of maintaining license and bad faith in use of discretion following hacking). Additionally, as detailed further below (*see infra* § IV.A.3), *Doe* correctly

1    held that the purported clause limiting liability did not bar nominal damages or disgorgement.

2    Accordingly, the Court should deny Meta's motion to dismiss for the same reasons it denied Meta's

3    motion in *Doe*—plaintiffs allege intentional conduct and seek damages not barred by the clause,

4    including disgorgement, restitution, nominal damages, and liquidated damages.[2]

5        Judge Gilliam's recent decision in *Kennedy v. Meta Platforms Inc.*, 2025 WL 1935433, at *2-3

6    (N.D. Cal. June 5, 2025) does not counsel a different result. In *Kennedy*, the Court found claims were

7    barred by Meta's TOS to the extent her claims were based on Meta's alleged failure to keep Plaintiff's

8    account secure and free from disruptions. *See also Kennedy v. Meta Platforms, Inc.*, No. 23-cv-06615-HSG,

9    2024 WL 4565091, at *1-4 (N.D. Cal. Oct. 23, 2024) (same). Again, here, Plaintiffs do not merely

10   claim that Meta failed to protect Plaintiffs' accounts from hackers. Rather, Meta committed the

11   intentional act of continuing to profit from Plaintiffs' and similar users' accounts by keeping its license

12   and using personal information while Plaintiffs did not have the use of the accounts that they provided

13   in consideration for Meta's monetization of their personal information. Stated otherwise, differently

14   from *Kennedy* where Meta could not be held "responsible for the actions of third parties," here,

15   Plaintiffs seek to hold Meta liable for its own actions of maintaining it license and the accounts to

16   profit even after those accounts had been stolen by hackers.

17       Meta's other cited cases fare no better. In *Damner v. Facebook, Inc.*, No. 20-cv-05177-JCS, 2020

18   WL 7862706, at *1-3 (N.D. Cal. Dec. 31, 2020), which was decided before this Court's decision in

19   *Doe*, a pro se plaintiff alleged Meta failed to restore his access to his account after hackers took over.

20   Here, Plaintiffs do not seek to force Meta's discretion to "take appropriate action – for example . . .

21   removing content, blocking access to certain features, disabling an account, or contacting law

22   enforcement," SAC ¶ 35 at p. 12, rather, Plaintiffs allege that Meta may take one of these actions that

23   it deems appropriate; but, that it may not take the affirmative action of maintaining a license on a

24

25   _____

26   [2] Leaving this Court's decision in *Doe* out of the discussion all together, Meta instead misapplies this
     Court's decision in *King v. Facebook, Inc.*, No. 19-cv-01987-WHO, 2019 WL 6493968, at *2 (N.D. Cal.
     Dec. 3, 2019) to the instant allegations. In *King*, a pro se plaintiff objected to Meta's suspension of his
27   account for misconduct. Here, Meta has not suspended accounts. That is part of the problem—Meta
     keeps the license to the data and these accounts stay up continuing to generate revenue for it. Meta's
28   citation to *Moates v. Facebook*, No. 22-cv-04478-RFL, 2024 WL 2853976 (N.D. Cal. Apr. 3, 2024) is
     unavailing for the same reason as, there, the plaintiff similarly alleged that Meta suspended his account.

hacked account that has not been restored to the user or suspended along with Meta's license to monetize that information.

Meta's reliance on *Long v. Dorset*, 369 F. Supp. 3d 939 (N.D. Cal. 2019) is also misplaced. In *Long*, the plaintiff was an administrator of a business Facebook page, and a hacker compromised that page, made themselves the administrator, and posted plaintiff's copyrighted material to the page. *Id.* at 942. The plaintiff sent a series of emails to Facebook, notifying it of the copyright infringement. *Id.* at 943. Unlike the instant case, Facebook responded to the plaintiff's emails, and within five business days, restored plaintiff's access to the business page. *Id.* Notably, despite Meta's arguments in the instant motion, the *Long* court did not indicate that the identified promise, that Facebook will "take appropriate action, by for example, offering help, removing content, blocking access to certain features, disabling an account, or contacting law enforcement" was not an actionable promise, and indeed treated it as if it were. *Id.* at 948 (cleaned up). The court, however, ruled that since the contractual language contained no stated time in which Facebook had to meet its promise, the time for compliance must be "reasonable" and five business days was reasonable. *Id.* Notwithstanding the glaring factual differences resulting from Meta's changed practice vis-à-vis locked out users over the last decade, *Long* is inapposite because it challenged the timing in which the account was reinstated.

In short, the language purporting to limit Meta's liability does not apply to the conduct complained of by Plaintiffs: Meta's refusal to honor the bargained for exchanges between Facebook and its users, and does not warrant dismissal of Plaintiffs' claims.

2.     *Plaintiffs have alleged a contractually enforceable promise*

Contrary to Meta's distorted version of Plaintiffs' allegations, Plaintiffs allege that Meta breached its adhesive TOS by maintaining its license to use Plaintiffs' personal information after Plaintiffs lost the use of their accounts, which also deprived them of the ability to revoke Meta's license to use their information as well. Any ambiguities must be construed against Meta as the drafter. *Karl v. Zimmer Biomet Holdings, Inc.*, No. C 18-04176 WHA, 2019 WL 2775567, at *8 (N.D. Cal. July 2, 2019).

Meta claims that it cannot have breached its TOS because "investigating account takeovers, restoring access to locked-out users, and deleting and disabling stolen accounts is within Meta's sole discretion." Mot. at 16. But, while it might be in Meta's discretion to decide whether to restore access

7

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS SECOND AMENDED CLASS ACTION COMPLAINT
CASE NO. 3:24-CV-06559-WHO

to users or to delete or disable stolen accounts, it must do one of those two things or it breaches its contract by maintaining a license and continuing to use personal information while it does not provide use of the Facebook account containing personal information in return. *See* SAC ¶¶ 32-37 on pp. 12-13. Further, Meta fails to point to anywhere in its TOS where it reserved the right to continue to use personal information and its license to do that when Plaintiffs were deprived use of their accounts.

Next, Meta claims that Plaintiffs fail to point to any sufficiently definite contract provision. This is not true. Meta's promise to provide services in exchange for a user's agreement that they can monetize that information to show users ads is a textbook example of definite promise. Mot. at Ex 1 at 5-6; *Id.* Ex. 5 at 4 ("Instead of paying to use Facebook …, by using the Meta Products covered by these Terms, you agree that we can show you personalized ads and other commercial and sponsored content that businesses and organizations pay us …. We collect and use your personal data in order to provide the services described above to you.").

Plaintiffs further allege Meta's license provisions promise that Meta's expansive "non-exclusive, transferable, sub-licensable, royalty-free, and worldwide license to host, use distribute, modify, run, copy, publicly perform or display, translate and create derivative works of your content" will only "end when your content is deleted from our system . . . **You can delete individual content you share, post, and upload at any time**" but otherwise "this license will continue until the content has been fully deleted." SAC ¶ 36 at p. 12 (emphasis added).

This is not "ambiguous", "aspirational", or a "statement[ ] of objective[ ]" (Mot. at 11, n.6), but a clear, definite statement notifying each party of its rights regarding the license that Meta has over a user's content, and how the user can modify or terminate the same. Meta breached this definitive contractual promise by precluding Plaintiffs from deleting their content and retaining its own license to continue to profit from that license.

Moreover, as mentioned, this Court has already found some of the other provisions Meta claims are not sufficiently definite to, in fact, be sufficiently definite and thus supportive of a plausible breach of contract. *See Doe*, 690 F. Supp. 3d at 1085-86; *Compare id.* at 1085 *with* SAC ¶¶ 35 at p. 13, 152. For each of these promises, the court found that allegations that Meta either did not actually meet its promises, or only partially complied and/or did so in a way that did not actually give plaintiff the

benefit of the Terms or Privacy Policy's promises. *See id.* at 1085-86. For example, the plaintiff's allegations that "Meta developed advanced technical systems to detect misuse . . . [but] Meta has not used those systems . . . and has not taken appropriate action [to curtail such use]," were sufficient to support a breach of that provision. *Id.* at 1085. Here, Plaintiffs allege in detail that Meta gutted and essentially eliminated its customer support team, such that the team does not actually assist its users as promised nor combat harmful or unlawful behavior. *See generally* SAC ¶¶ 35-45; *id.* ¶ 39. As this court has previously concluded, these promises are sufficiently definite to support a claim for breach of contract. *Doe*, 690 F. Supp. 3d at 1085-86.

Meta's cited authority does not support finding the alleged promises in the instant case are not sufficiently definite. In *Wozniak v. YouTube LLC*, 100 Cal. App. 5th 893, 918-19 (Cal. Ct. App. 2024), the court considered whether it could hold YouTube LLC liable for a cryptocurrency scam run by third parties on its platform given the limitations of the Communications Decency Act (CDA) under a promissory estoppel (rather than breach of contract theory). *See also Lloyd v. Facebook, Inc.*, No. 21-cv-10075-EMC, 2022 WL 4913347, at *1-2, *9 (N.D. Cal. Oct. 3, 2022) (Facebook not liable for rape and death threats made to her on its platform by members of a biker gang, despite Facebook's awareness of the posts, under promissory estoppel exception to CDA). Here, Plaintiffs' claims are not implicated by the CDA, nor are Plaintiffs seeking to hold Meta liable for content posted by third parties. Further, the breached provisions identified by Plaintiffs are more definite than those identified in *Wozniak* such as Google's statement that "[w]hen people use our products, they trust us with their information, and it's our job to do right by them. This means always being thoughtful about what data we use, how we use it, and how we protect it[,]" and "we engineer and employ one of the most advanced security infrastructures in the world. This means constantly strengthening our built-in security technologies to detect and protect against evolving online threats, before they ever reach our users." *Wozniak*, 100 Cal. App. 5th at 920. These vague and general statements are a far cry from the specific and definite terms Plaintiffs allege Meta breached here.

Likewise, as discussed *supra* § IV.A.1, *Long* is distinguishable because the court found no breach because Facebook acted within five days to reinstate access. *See Long*, 369 F. Supp. 3d at 948. Further, while the court only gave a cursory review to the breached terms in *Long*, when presented

with detailed allegations like those at issue here, the court in *Doe* found that the same promises were in fact sufficiently definite—including Meta's promise that it "employ[s] dedicated teams around the world… to detect potential misuse of our products…" *Doe*, 690 F. Supp. 3d at 1085-86; SAC ¶¶ 35, 152, 165, 190, 209. Meta's remaining caselaw also does not lend it support, as they relate to challenges of Meta's decision to suspend user accounts. *See supra* n. 2 (distinguishing *Moates* and *King*). Plaintiffs here have alleged sufficiently definite promises that Meta breached. SAC ¶¶ 32-38 on p. 12-13.

>   3.    *Plaintiffs sufficiently allege injury from Meta's breach of contract*

Meta argues that Plaintiffs have not alleged damages sufficient for their breach of contract claim because they have only alleged that they have lost memories and that, according to Meta, is not economic harm. Meta is wrong for several reasons.

**First**, Plaintiffs' allegation that Meta's breach of its Contract entitles them to nominal damages is alone sufficient for establishing injury for purposes of California contract law. *See In re Facebook Priv. Litig.*, 192 F. Supp. 3d 1053, 1060-62 (N.D. Cal. 2016) (listing California cases supporting the view that nominal damages satisfy the damages element of a breach of contract claim and finding that in the Ninth Circuit there is no precedent counseling against a finding that plaintiffs may establish injury in fact for a breach of contract claim for nominal damages); *Lundy*, 2021 WL 4503071, at *2 ("For the damages element of plaintiffs' contract and quasi-contract claims, plaintiffs have adequately pleaded claims for disgorgement and nominal damages. These types of damages are not covered by the limitation of liability provision Facebook points to in its motion to dismiss. Nominal damages may be recovered for a breach of contract under California." (listing cases)); *Elation Sys., Inc. v. Fenn Bridge LLC*, 71 Cal. App. 5th 958, 965-967 (Cal. Ct. App. 2021) (reaffirming the proposition that nominal damages may be awarded in contract cases); Cal. Civ. Code § 3360 (permitting recovery of nominal damages even if plaintiffs suffers "no appreciable damages"); *see also Doe*, 690 F. Supp. 3d. at 1084-85.[3]

---

[3] Meta's reliance on cases like *Advanced Risk Managers, LLC v. Equinox Management Group, Inc.*, No. 19-cv-03532-DMR, 2021 WL 4243400, at *7 (N.D. Cal. Sept. 17, 2021) and *Ruiz v. Gap, Inc.*, 380 F. App'x 689, 691 (9th Cir. 2010), which quote from the Ninth Circuit's decision in *Aguilera v. Pirelli Armstrong Tire Corp.*, 223 F.3d 1010, 1015 (9th Cir. 2000)), are misplaced. As the court in *In re Facebook Privacy Litig.* explained, in *Aguilera*, the Ninth Circuit examined actual damages with respect to determining breach, rather than the availability of nominal damages, and that decision thus does not establish that nominal damages are insufficient harm under California law where a breach of definite contract terms

10

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS SECOND AMENDED CLASS ACTION COMPLAINT
CASE NO. 3:24-cv-06559-WHO

**Second**, Meta's TOS contain a liquidated damages provision in Section 4.3 of the TOS that provides that Meta's liability for breaches is $100. *See* Mot. Ex. 1 at 14, *Id.* at Ex. 5 at 11. The term reads: "Our aggregate liability arising out of or relating to these Terms or the Meta Products will not exceed the greater of $100 or the amount you have paid us in the past twelve months." Under California law, liquidated damages are "an amount of compensation to be paid in the event of a breach of contract, the sum of which is fixed and certain by agreement" and "to be sufficiently fixed and certain to qualify as 'liquidated damages,' a provision must either set the exact amount (i.e., a single number), or provide some formula by which the amount is 'certain or readily ascertainable.'" *Bayol v. Zipcar, Inc.*, 78 F. Supp. 3d 1252, 1256 (N.D. Cal. 2015) (cleaned up) (quoting *Chodos v. West Publ'g Co.*, 292 F.3d 992, 1002 (9th Cir.2002) and listing cases).

Meta claims that $100 amount is not a liquidated damages provision at all, because it caps or "*limits damages.*" Mot. at 14 (emphasis in original). But the $100 liquidated damages provision is not a cap or limit on damages. It is instead a sum to be paid upon breach that is fixed and certain. Unlike most of the clauses at issue in the authority cited by Meta, there are two elements of the clause: (1) $100, and (2) the amount paid in the past twelve months. The provision provides that Plaintiffs get the **greater** of those two amounts. So, if a user paid no dollar amount to Meta in the past year, that user is entitled to $100, as it is greater than zero (as there were no payments). If a user paid Facebook only $50 in the past year, they would still get $100—the amount fixed and payable upon breach. In both instances, the $100 is a floor, not a ceiling that "limits damages." Instead, it fixes damages in the event of breach and thus is a liquidated damages provision. *See, e.g., Bayol*, 78 F. Supp. 3d at 1256 (collecting cases). In other words, it is a clear articulation of what the user is entitled to upon breach even if they paid nothing to Meta in the past year, *i.e.*, liquidated damages. The second element related to amounts paid to Meta—which does not apply here to these consumer users of Facebook—is not a cap either. That element can be any amount as long as it fits within the easily calculated amount of what the user paid to Facebook. It too fixes damages in the event of breach. *See id.* Let's say, for example that a user paid $500 dollars in the past twelve months. In that case the user would be entitled

has been alleged or established. *See In re Facebook Priv. Litig.*, 192 F. Supp. 3d at 1061. Indeed, California cases that actually evaluate nominal damages are to the contrary. *See id.*

1   to $500. If the user paid Facebook $20 million in a year, that would be the damages. So, the clause has

2   a minimum definitive amount ($100), and a readily ascertainable and calculable amount if the user paid

3   Facebook over $100. That is not a cap, it's a liquidated damages provision. *See id.*

4        Meta also claims that the provision is not sufficiently definite to serve as a liquidated damages

5   provision because it does not identify a "fixed and certain sum," and instead provides that "**damages**

6   **may be any amount less than $100** or the amount a Facebook user has paid Meta in the preceding

7   twelve months." Mot. at 14 (emphasis added). Not true. Under the provision, damages may not in

8   fact be "any amount less than $100." If the amount paid is less than $100, the user is entitled to $100.

9   Beyond that, the amount ($100) is certain and definite because it is a sum certain. And even the second

10   element can be easily calculated at the time of breach and is therefore sufficiently definite.

11        In that regard, in *Bayol*, the court found that Zipcar's late fees of $50 per hour, up to $150,

12   were liquidated damages—even though the fees varied and were subject to a cap. 78 F. Supp. 3d at

13   1256. The court explained that the provision constitutes liquidated damages because it prescribes

14   either a definite sum or a formula yielding an amount "certain or readily ascertainable" at the time of

15   breach. *Id.* at 1256–58. That reasoning applies squarely here: Meta's TOS set a definite, sum-certain

16   floor of $100, payable even where a user paid nothing in the past twelve months. Like *Bayol*, this is a

17   liquidated damages clause even though it also contains an element with a calculable amount of

18   damages. *See also Hahn v. Massage Envy Franchising, LLC*, No. 12CV153 DMS BGS, 2014 WL 5100220,

19   at *12 (S.D. Cal. Sept. 25, 2014) ("When a contract provides a formula to calculate liquidated damages

20   based on profits, and damages can be calculated after breach when the profits had been earned, the

21   provision is for liquidated damages, even if the actual amount cannot be calculated at the time of

22   contract formation."); *Free Range Content, Inc. v. Google Inc.,* No. 14-cv-02329-BLF, 2016 WL 2902332,

23   at *11 (N.D. Cal. May 13, 2016) (finding that the provision for damages amounting to the "unpaid

24   amount" is "readily ascertainable," and amounts to a liquidated damages provision). Thus, even the

25   supposed cap here can be readily calculated at breach, and is, therefore, also a liquidated damages

26   provision.

27        Meta does cite two cases holding that certain provisions are caps, and not liquidated damages

28   provisions. But neither case involved a definitive sum-certain floor with a calculable ceiling like the

1    provision at issue here. *See W. Union Tel. Co.* v. *Nester*, 309 U.S. 582, 585, 587-88 (1940) (provision

2    limiting liability to nothing "beyond the sum of five hundred dollars" was not liquidated damages as

3    it was a cap); *Grouse River Outfitters Ltd.* v. *Oracle Corp.*, No. 16-cv-02954-LB, 2018 WL 6099783, at *1-

4    2 (N.D. Cal. Nov. 21, 2018) (provision capping damages to twelve months of fees was not a liquidated

5    damages provision).[4]

6         Meta also cites, *Johnson* v. *Microsoft Corp.*, No. C06-0900RSM, 2007 WL 2404844, at *2 (W.D.

7    Wash. Aug. 17, 2007), which found that a clause that had a floor of $5 and a cap of actual damages

8    was not a liquidated damages provision. That case had little analysis, and thus has little persuasive

9    value. And it is distinguishable because the cap in that clause was a vague reference to "actual

10   damages," not a readily calculable amount, as in this case and in *Bayol*.

11        Despite what Meta says, this is liquidated damages provision. There is a sum-certain floor of

12   $100. And the high end is also not a cap, it is a reasonably calculated amount that has been fixed for

13   breach. And, importantly, here, Plaintiffs did not pay any amount to Meta such that the portion of the

14   clause stating "or the amount you have paid us in the past twelve months" does not even apply to the

15   damage here. Rather, here, Plaintiffs' losses were of the type that are impracticable to calculate, and

16   the fixed $100 amount represents a reasonable endeavor to estimate fair compensation for the loss

17   sustained—and Meta cannot meet its burden of showing otherwise especially as it drafted the TOS

18   and fixed the $100 amount. *McGuire v. More-Gas Invs.*, LLC, 220 Cal. App. 4th 512, 522 (Cal. Ct. App.

19   2013) (applying Civil Code § 1671 and explaining that California policy favors "the enforcement of

20   liquidated damage provisions except against the consumer in a consumer case" and that a liquidated

21   damages provision is valid unless the party opposing the provision shows the amount fixed is

22   unreasonable). Thus, with respect to Plaintiffs' and putative class members' claims, the amount of

23   Meta's liability is fixed as $100 and is, thus, a liquidated damages provision. To the extent that this

24   provision is unclear or ambiguous, Plaintiffs' reasonable interpretation controls.

25

26   ────────────────
     [4]Meta also cites a comment from Restatement (First) of Contracts—which has now of course been
27   superseded by the Restatement (Second) of Contracts—in support of its argument that a provision
     that limits damages is not a liquidated damages provision. But the Restatement (First) of Contracts
     does not set forth the California law on liquidated damages that controls here. Rather, case law
28   applying the California Civil Code to contracts is applicable here. *McGuire,* 220 Cal. App. 4th at 521-
     22 (discussing established liquidated damages law in California and applying California's Civil Code).

4.     *Plaintiffs adequately state their claims for breach of the covenant of good faith and fair dealing*

Meta breached the implied covenant of good faith and fair dealing by exercising its discretion in bad faith to frustrate the purpose of the TOS in maintaining its license to Plaintiffs' personal information—which only Meta had access to revoke, but instead maintains—while at the same time depriving Plaintiffs of the ability to use Facebook and to revoke Meta's license over their personal information so it couldn't continue to be misused by hackers. *See* SAC ¶¶ 118, 166, 167, 169, 177. Meta states in its TOS that the way for users to cancel the license is to delete their personal information from their accounts. *Id.* at ¶ 32. Since Meta does not assist them in restoring access to their accounts while it continues to maintain its license under the TOS, users cannot delete their material to revoke that license. *See*, *e.g.*, *id.* at ¶¶ 10, 131, 169, 175. In the event the Court finds that this is not an express breach of contract—it is—the Court could still find that this amounts to Meta's frustration of the purpose of the contract—the exchange of the customer's right to use the platform in exchange for Meta's license. Indeed, by maintaining its license while Plaintiffs did not have access to even revoke it, Meta frustrated the fundamental basis of the exchange between the parties, which was a license to monetize data given in return for use of the platform. Instead of exercising its discretion under the TOS to either suspend the accounts or restore access, Meta allows hackers to operate accounts while it continues to benefit from the license to use information that Plaintiffs and putative class members cannot even gain access to revoke Meta's license to use their information. *Id.* at ¶ 177.

Meta wrongly claims that Plaintiffs' claim for breach of the implied covenant of good faith and fair dealing is duplicative of her contract claim. Contrary to Meta's contention, Plaintiffs' breach of implied covenant claim is not duplicative as, even if Plaintiffs do not succeed on their breach of contract claim, they could still plead a claim for breach of the implied covenant based on Meta's bad faith frustration of the purpose of the contract between the parties here. *See Celador Int'l, Ltd. v. Walt Disney Co.*, 347 F. Supp. 2d 846, 853 (C.D. Cal. 2004) (denying motion to dismiss implied covenant claims and recognizing that breach of contract claims and implied covenant claims overlap in remedies and underlying circumstances); *In re Easysaver Rewards Litig.*, 737 F. Supp. 2d 1159, 1174–75 (S.D. Cal. 2010) (plaintiff sufficiently pleaded implied covenant where the defendant not only violated the contract but also frustrated the purpose or a benefit of the contract—to keep user's sensitive data

confidential); *Calhoun v. Google LLC*, 526 F. Supp. 3d 605, 634 (N.D. Cal. 2021) (upholding good faith and fair dealing claim because "Plaintiffs allege not only that Google violated the contract between the parties, but also that Google acted in bad faith, such as by circumventing cookie blockers.").

In that regard, under California law, breach of the implied covenant of good faith and fair dealing may create a distinct cause of action from breach of contract where "the covenant prevents a party from acting in bad faith to frustrate the contract's actual benefits." *Daly v. United Health Ins. Co.*, No. 10–CV–03032–LHK, 2010 WL 4510911, at *5 (N.D. Cal. Nov. 1, 2010) (quoting *Guz v. Bechtel Nat. Inc.*, 24 Cal. 4th 317, 353 n.18 (Cal. 2000) and collecting cases applying exception from *Guz*); *JH Kelly, LLC v. AECOM Tech. Servs., Inc.*, No. 20-cv-05381-HSG, 2022 WL 195648, at *3 (N.D. Cal. Jan. 21, 2022) ("[C]ourts have read *Guz* to allow simultaneous breach of contract and implied covenant claims when the plaintiff alleges that the defendant exercised a right under the contract in bad faith to frustrate the contract's benefits.").

Indeed, contrary to Meta's arguments, courts acknowledge that claims for breach of contract and breach of implied covenant of good faith and fair dealing "will always be based on the same facts; a certain set of circumstance gives rise to a lawsuit. They will always seek the same remedy; the same remedies are available for both claims." *Celador*, 347 F. Supp. 2d at 853; *see also JH Kelly*, 2022 WL 195648, at *3 ("[C]ourts analyzing whether a claim for breach of the implied covenant is duplicative of a breach of contract claim should not mechanically inquire whether the same facts are alleged and whether the same remedy is sought because only a limited set of circumstances can give rise to a contract lawsuit, and the same remedies are available for both claims." (cleaned up)). Accordingly, so long as Plaintiffs allege that a defendant acted in bad faith to frustrate the contract's actual benefits, courts uphold claims for violation of the covenant. *Calhoun*, 526 F. Supp. 3d at 634; *In re Easysaver Rewards Litig.*, 737 F. Supp. 2d at 1174-75; *Daly*, 2010 WL 4510911, at *5; *In re Facebook, Inc., Consumer Priv. User Profile Litig.*, 402 F. Supp. 3d 767, 802 (N.D. Cal. 2019); *Celador*, 347 F. Supp. 2d at 853; *Teague v. Biotelemetry, Inc.*, No. 16-cv-06527-TSH, 2018 WL 5310793, at *12 (N.D. Cal. 2018).

*Celador* is instructive. *See* 347 F. Supp. 2d 846. There, the defendant similarly argued that because the plaintiffs' claim for breach of the implied covenant was based on the same facts as the breach of contract claim, it was superfluous. The court held that it could not mechanically accept this

1  argument. The court allowed the breach of the implied covenant claim to proceed because "even if

2  Plaintiffs are not ultimately successful on their breach of contract claim, they may still be able to prevail

3  on their breach of the covenant of good faith and fair dealing claim[]" by showing bad faith frustration

4  of purpose. *Id.* at 853. According to the court, "the fact finder could conclude," without finding a

5  breach of the agreement, "that the actions of Defendants frustrated a benefit of the contract." *Id.*

6      And, here, if the Court finds that Meta has not breached an express term of its TOS, Meta

7  could still plead a claim for breach of implied covenant on the ground that Meta frustrated the purpose

8  of the TOS to allow Plaintiffs to use the platform in exchange for Meta's license to monetize their

9  personal information by maintaining a license to monetize Plaintiffs' and putative class members'

10  personal information while Plaintiffs and class members do not have use of the service and could not

11  even access the service to revoke Meta's license to their information. As such, Plaintiffs sufficiently

12  allege that Meta acted in bad faith to frustrate the purpose of the TOS. *See, e.g., In re Facebook, Inc.,*

13  *Consumer Priv. User Profile Litig.*, 402 F. Supp. 3d at 802 (concluding plaintiffs stated claims for both

14  breach of contract and breach of good faith and fair dealing "with respect to the . . . [same] categories

15  of conduct[,]" noting  "the case for breach of implied covenant is stronger [than for breach of

16  contract], because even if Facebook were, at a later stage in the litigation, able to identify a technical

17  argument for why it did not quite violate the literal terms of its contract with its users, it would be

18  difficult to conclude (if the factual allegations in the complaint are true) that Facebook did not frustrate

19  the purposes of the contract, and intentionally so.").

20      Meta's cited cases do not help it. Both *In re Google RTB Privacy Litig.*, 606 F. Supp. 3d 935, 945

21  (N.D. Cal. June 13, 2022) and *Salari v. Walt Disney Parks and Resorts U.S., Inc.*, No. SACV 23-01406-

22  CJC (DFMx), 2023 WL 11983325, at *3 (C.D. Cal. Aug. 28, 2023) confirmed that "where the plaintiff

23  alleges that the defendant acted in bad faith to frustrate the contract's benefits," a plaintiff's implied

24  covenant claim may rely on the same facts and damages alleged in breach of contract claim. Only, in

25  those cases, the plaintiffs did not detail frustration of the contract's purpose or benefits. *See Salari*,

26  2023 WL 11983325, at *4 (concluding that plaintiff failed to allege any act "done to frustrate fulfillment

27  of her contract"); *In re Google RTB Privacy Litig.*, 606 F. Supp. 3d at 945. Here, on the other hand,

28  Plaintiffs included detailed allegations regarding the fact that Meta profits while Plaintiffs are deprived

1  of the benefit of their bargain, namely, the ability to use Facebook and control the personal

2  information comprising Meta's license, and cannot even revoke Meta's license to use their

3  information. *See* SAC ¶¶ 40, 166, 169, 174-77. This easily meets the threshold of unfairly frustrating

4  the agreed common purposes and disappointing the reasonable expectations of Plaintiffs and putative

5  class members. *See e.g. Ellsworth v. U.S. Bank, N.A.*, 908 F.Supp.2d 1063, 1086–87 (N.D. Cal. 2012)

6  ("[T]he court refused to grant summary judgment for the bank because the bank's discretionary

7  authority was still subject to the covenant of good faith and fair dealing . . . [and defendant failed to

8  exercise its] 'discretion [in] . . . good faith and fair dealing and not so as to maximize bank revenue

9  and to penalize customers as much as possible.'" (quoting *Gutierrez*, 622 F. Supp. 2d at 954)); *Teague*,

10  2018 WL 5310793, at *12 (allowing plaintiff to proceed to trial on his . . . claim for relief for breach

11  of the covenant of good faith and fair dealing . . . [because defendant's conduct] frustrate[d] [the]

12  plaintiff's legitimate expectations of receiving commission on the sale[,]" i.e., the benefits of the

13  contract); SAC ¶ 175*; see also id.* at ¶¶ 40, 166, 169, 171-172, 174-177.

14      Importantly, whether Plaintiffs' allegations regarding Meta's bad faith conduct, constitutes bad

15  faith is a question of fact that is not appropriately decided upon motion to dismiss. *Daly*, 2010 WL

16  4510911, at *4; *see also Moore v. Wells Fargo Bank, N.A.*, 39 Cal. App. 5th 280, 291-92 (Cal. App. Ct.

17  2019). Accordingly, Meta's argument that Plaintiffs' implied covenant complaint claim is duplicative

18  and should be dismissed should be rejected.

19      Lastly, Meta again argues that Plaintiffs contravene its express TOS terms by demanding that

20  access be restored. But Meta continues to misrepresent Plaintiffs' claims, which allege that Meta

21  breaches its TOC and Privacy Policy by failing to exercise its discretion in either direction—by failing

22  to restore access or to suspend the accounts while it keeps a license to monetize information. As the

23  premise of Meta's argument is flawed—because Plaintiffs do not seek to force Meta's hand in terms

24  of how it exercises its discretion—Meta's authority, which all dealt with requests for relief in violation

25  of express terms, is inapposite. *Compare* SAC ¶ 177 ("Meta's failure to exercise its discretion to restore

26  Plaintiffs' and the Class's access to the Facebook platform, or to at least disable the hacked accounts,

27  while receiving the benefits of Plaintiffs' and the Class's performance is in bad faith.") *with* Mot. at 16.

28  By failing to either restore access or suspend the accounts, and instead continuing to hold a license to

17

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS SECOND AMENDED CLASS ACTION COMPLAINT
CASE NO. 3:24-CV-06559-WHO

1  monetize Plaintiffs' and putative class members' posted content and purchasing information, Meta

2  acted in bad faith and Plaintiffs have stated a claim for breach of the covenant of good faith and fair

3  dealing. *See, e.g., In re Facebook, Inc., Consumer Priv. User Profile Litig.*, 402 F. Supp. 3d at 802.

4             5.      *Plaintiffs sufficiently allege quasi-contract, unjust enrichment*

5         Meta is incorrect that it is entitled to dismissal of Plaintiffs' quasi-contract, unjust enrichment

6  claim simply "because the relationship between Plaintiffs and Meta is governed by an express

7  contract." Mot. at 25. Unjust enrichment may be pled in the alternative alongside claims for breach of

8  an express contract as they are here. *See, e.g., Doe*, 690 F. Supp. 3d at 1086; *Ramirez v. Bank of Am.,*

9  *N.A.*, 607 F. Supp. 3d 969, 978 n. 5 (N.D. Cal. 2022); *Ellsworth v. U.S. Bank, N.A.*, 30 F. Supp. 3d 886,

10  915 (N.D. Cal. 2014); *Oracle Corp. v. SAP AG*, No. C 07-1658 PJH, 2008 WL 5234260, at *9 (N.D.

11  Cal. Dec. 15, 2008); *Rollins v. Dignity Health*, 338 F. Supp. 3d 1025, 1042 (N.D. Cal. 2018); *In re Facebook,*

12  *Inc. Consumer Priv. User Profile Litig.*, 402 F. Supp. 3d at 803. As discussed below, *see infra* § IV.B.1,

13  Plaintiffs sufficiently allege they are entitled to restitution from the ill-gotten gains earned by Meta

14  from Plaintiffs' lost personal property. *ESG Cap. Partners, LP v. Stratos*, 828 F.3d 1023, 1038 (9th Cir.

15  2016) (explaining that all that is required of the Plaintiff to sufficiently "allege unjust enrichment as an

16  independent cause of action . . . [is] that the defendant received and unjustly retained a benefit at the

17  plaintiff's expense.").  Thus, in the event that the breach of contract claim ultimately fails for any

18  reason, the claim for unjust enrichment should be allowed to proceed.

19         **B.      Plaintiffs State a Claim for Violation of the UCL**

20             1.      *Plaintiffs have standing to bring their UCL claim*

21         Meta argues that Plaintiffs lack standing under the UCL because they fail to allege that Meta

22  caused them to lose "money or property." However, to satisfy the statutory standing requirement

23  under the UCL, a plaintiff must merely suffer an injury in fact that is an "economic injury." *Kwikset*

24  *Corp. v. Super. Ct.*, 51 Cal. 4th 310, 321–22 (Cal. 2011). Here, Plaintiffs have met this requirement by

25  alleging the loss of their personal property—their valuable personal information.

26         Indeed, the Ninth Circuit and a number of district courts, including in this District, have

27  concluded that plaintiffs who suffered a loss of their personal information suffered economic injury

28  and had standing under the UCL. *See In re Facebook Priv. Litig.*, 572 F. App'x 494, 494 (9th Cir. 2014)

1    (concluding that the plaintiffs had plausibly alleged that they experienced harm when their personal

2    information was disclosed in a data breach and they lost the sales value of their personal information);

3    *Calhoun*, 526 F. Supp. 3d at 636 ("plaintiffs who suffered a loss of their personal information suffered

4    economic injury and had standing"); *In re Marriott Int'l, Inc., Cust. Data Sec. Breach Litig.*, 440 F. Supp.

5    3d 447, 461 (D. Md. 2020) ("[T]he growing trend across courts that have considered this issue is to

6    recognize the lost property value of this information."); *In re Yahoo! Inc. Cust. Data Sec. Breach Litig.*,

7    No. 16-MD-02752-LHK, 2017 WL 3727318, at *13-14 (N.D. Cal. Aug. 30, 2017); *In re Anthem Inc.*

8    *Data Breach Litig.*, No. 15-MD-02617-LHK, 2016 WL 3029783, at *14 (N.D. Cal. May 17, 2016). As

9    they allege loss of their property that they cannot access, while Meta can and profits from it, Plaintiffs

10   sufficiently allege economic injury for purposes of the UCL and are owed restitutionary disgorgement

11   of Meta's profit from the loss of their property interest. *See* SAC ¶¶ 14, 201-2; *see also* Cal. Bus. & Prof.

12   Code §§ 17203, 17204; *Kwikset*, 51 Cal. 4th at 321–22 ("A restitution order against a defendant thus

13   requires both that money or property have been lost by a plaintiff, on the one hand, and that it have

14   been acquired by a defendant, on the other.").

15        Meta's cited caselaw is inapposite because in each case the plaintiffs made no effort to quantify

16   the value of the loss of the property interest in personal information.  For example, in *Bass v. Facebook*,

17   the court stated that the plaintiffs failed to plead with specificity the loss of value of his personal

18   information. 394 F.Supp.3d 1024, 1040 (N.D. Cal. 2019). According to the court, the plaintiff

19   "provided no market for the personal information or the impairment of the ability to participate in

20   that market." *Id.* Similarly, *in In re Google Inc. Cookie Placement Consumer Priv. Litig.*, the plaintiffs, both in

21   their district and appellate briefing, did not state their economic injury under the UCL with specificity,

22   instead arguing that they could quantify their injury with later expert testimony. *See* Pl.'s Brief in Opp.

23   to Def. Google Inc.'s Mot. to Dismiss at 29, *In re Google Inc. Cookie Placement Consumer Priv. Litig.*, No.

24   1:12-md-02358-ER (D. Del. Mar. 29, 2013), Dkt. 81; Br. of Appellants, *In re Google Inc. Cookie Placement*

25   *Consumer Priv. Litig.*, No. 13-4300, 2014 WL 580660, at *52 (3d Cir. Feb. 5, 2014).

26        Plaintiffs here have pleaded with specificity the personal property they have lost—their

27   personal information, including pictures, private messages, and connections with personal and

28   business partners—and have approximately quantified Meta's ill-gotten gains. SAC ¶¶ 116, 120-123.

1  Specifically, Plaintiffs alleged numerous means of quantifying the damages, including that "reports

2  show that the value of a hacked Facebook account to be $45." SAC ¶¶ 120, 122.

3  Further, differently than in *Bass* where the plaintiffs did not actually lose personal property

4  because their information (while compromised) was still in the possession of plaintiffs, here, Plaintiffs

5  have lost access to their personal property entirely as they cannot access the personal information in

6  their account at all. *See*, *e.g.*, SAC ¶¶ 46, 50, 55, 56, 62, 63, 69; *Bass*, 394 F. Supp. 3d at 1031-32, 1040

7  (no allegations of lost property where personal information was shared and monetized, but remained

8  accessible to plaintiffs); *see also cf. In re Facebook, Inc., Consumer Priv. User Profile Litig.*, 402 F. Supp. 3d at

9  804 (failing to allege any money or property was lost when personal information was shared but also

10  accessible by plaintiffs). As such, this Court should find that Plaintiffs have alleged economic injury

11  sufficient to bring their UCL claim.

12  Moreover, courts in this district have recognized the loss of benefit of the bargain as sufficient

13  to constitute economic injury under the UCL, providing an additional reason that Plaintiffs have

14  sufficiently alleged damages. *See In re Anthem, Inc. Data Breach Litig.*, 2016 WL 3029783, at *30.

15  2.  *Plaintiffs state a claim under the unlawful prong of the UCL.*

16  The unlawful prong "borrows violations of other laws and treats them as unlawful practices

17  that the unfair competition law makes independently actionable." *Hadley v. Kellogg Sales Co.*, 243 F.

18  Supp. 3d 1074, 1094 (N.D. Cal. 2017) (cleaned up). Meta's suggestion that the underlying law must

19  provide a private right of action to be actionable under the UCL is not right. Unless a federal statute

20  expressly forbids a private action, virtually any state, federal or local law can serve as the predicate for

21  an action under the UCL even if the law itself has no private right of action. For example, California's

22  Sherman Law has no independent right of action, but plaintiffs routinely bring private actions for

23  violation of the Sherman Law under the UCL's unlawful prong. *See CoStar Grp., Inc. v. Com. Real Estate

24  Exch., Inc.*, 141 F.4th 1075, 1093-94 (9th Cir. 2025); *Backus v. Gen. Mills, Inc.*, 122 F. Supp. 3d 909, 929

25  (N.D. Cal. 2015). Courts also uphold unlawful prong claims predicated on FTC Act and guidelines.

26  *See Schmitt v. SN Servicing Corp.*, No. 21-cv-03355-WHO, 2021 WL 5279822, at *5-*6 (N.D. Cal. Nov.

27  12, 2021) (Orrick, J.).

28

1    Meta claims that Plaintiffs' allegations regarding their violations of the underlying laws are

2    insufficient. Not so. For example, Plaintiffs sufficiently allege that Meta violated the CRA. Under Cal.

3    Civ. Code § 1798.81.5, a business is required to "implement and maintain reasonable security

4    procedures appropriate to the nature of the information." To bring a CRA claim, plaintiffs must allege

5    that the business did not maintain reasonable security practices to protect customer data and allege

6    they personally lost money or property as a result. Here those allegations are present. *See, e.g.,* SAC ¶¶

7    11-12, 35-39 at pp. 12-14, 112, 125-130. Plaintiffs also allege violations of the California Consumer

8    Privacy Act (Cal. Civ. Code § 1798.100) by alleging, for example, that Meta's security measures were

9    unreasonable after massive layoffs to the team responsible for security, privacy, and integrity and

10   allowing hacking to rise exponentially. *See* SAC ¶¶ 35-39, 128. And, Plaintiffs allege violation of the

11   FTC Act by alleging that Meta employed unfair and deceptive business practices when it failed to tell

12   users impacted by hackers that it could not offer a reasonable means of regaining account access, and

13   even when users could not access their accounts, Meta would still profit off the license of users'

14   personal information. *See* SAC ¶¶ 31-34, 35-40 (*see* pp. 12-14), 112, 125-130. Accordingly, this case is

15   distinguishable from Meta's cited cases like *Hodges v. Apple, Inc.*, No. 13–cv–01128–WHO, 2013 WL

16   6698762, at *9 (N.D. Cal. Dec. 19, 2023) where the plaintiff's claims were dismissed because he merely

17   accused the defendant of violating multiple laws without stating how the laws were violated.

18   Meta's other cited cases are also unpersuasive. In *Dang v. Samsung Electronics Co.*, the court

19   dismissed the plaintiff's UCL unlawfulness claim not only because the court dismissed the underlying

20   violation, but also because the plaintiff attempted to argue that the unlawfulness claim was predicated

21   on two other laws not even mentioned in the count. No. 14-CV-00530-LHK, 2018 WL11348883, at

22   *7 (N.D. Cal. Jul. 2, 2018). And, in *McDonald v. Wells Fargo Bank, N.A.*, No.: CV 13-02334-KAW, 2013

23   WL 6512881, at *7 (N.D. Cal. Dec. 12, 2013), the plaintiff did not even identify any underlying statutes

24   that Wells Fargo violated.

25        3.        *Plaintiffs state a claim under the fraudulent prong of the UCL*

26   Plaintiffs sufficiently allege that Meta's omissions deceived Plaintiffs and consumers in

27   violation of the fraudulent prong of the UCL. Specifically, Plaintiffs allege that Meta "never informed

28   Plaintiffs and Class members that their accounts could be stolen with no recourse, or that the online

1   account recovery steps were nonfunctional or nonexistent, Plaintiffs and Class members believed that

2   they would continue to have access to their private social media accounts and that Meta would not

3   allow hackers to continue to use their accounts with impunity." SAC ¶ 192.

4        Meta's omission of the defect is actionable for two reasons: first, because account access is a

5   core function of Meta's bargain with users to license their personal content, and, second, because Meta

6   made representations to the contrary in its Terms of Service and Privacy Policy. *See Hodsdon v. Mars,*

7   *Inc.*, 891 F.3d 857, 861-62 (9th Cir. 2018).

8        Meta had a duty to disclose its inability to return account access because its omission about

9   account recovery related to the core function of account access. This duty arises even if the omission

10  did not relate to a safety risk. *See In re MacBook Keyboard Litig.*, No. 5:18-cv-02813-EJD, 2019 WL

11  1765817, at *5-7 (N.D. Cal. Apr. 22, 2019). Meta bargained with Plaintiffs and Class Members: in

12  exchange for licensing their content, users were given the ability to use Meta's platforms. When, like

13  here, an omission goes to the core function of a product, courts find that defendants have a duty to

14  disclose, and a plaintiff may maintain a claim for fraudulent omission. *See, e.g., id.* at *5 (listing cases).

15       **First**, Meta had a duty to disclose the inability to return account access because (1) the

16  omission was material to reasonable users signing up to use Facebook and Instagram, (2) account

17  access is central to the function of Meta's platforms, and (3) Meta has exclusive knowledge of material

18  facts related to the hacking, and possible recovery and return of its users' accounts, which (4) Meta

19  actively concealed by creating recovery steps and automated customer support streams, yet failing to

20  disclose the truth of the recovery steps when users created their accounts—that users will more than

21  likely  not be able to regain access to their accounts. *See id.* at *6 (citing *Hodsdon*, 891 F.3d at 862); *see*

22  *also* SAC ¶ 192 (alleging that Meta's "omission that hackers could steal user accounts with impunity

23  were material because they were likely to deceive reasonable consumers about the adequacy of

24  Defendant's data security and ability to protect the confidentiality of Plaintiffs' and Class members'

25  personal information."); *id.* ¶¶ 36-39 at p. 13-15 (alleging that Meta had exclusive control over the

26  management and subsequent gutting of the staffs responsible for customer service and support); *id.*

27  ¶¶ 36-37 at p. 12 (alleging that Meta had the exclusive control and sole discretion to disable and delete

28

1    consumer accounts when they detect that accounts have been hacked); *id.* ¶¶ 35-37, 39 at p. 13-15; ¶¶

2    35-36 at p. 12 (Meta's misleading recovery steps and automated customer support obscured the truth).

3        **Second**, Meta's omission is actionable for the independent reason that it is contrary to Meta's

4    express statements. The Terms and Privacy Policy state that Meta would maintain the security and

5    safety of its users and its community by "work[ing] hard to maintain the security (including the

6    availability, authenticity, integrity and confidentiality) of [Meta's] Products and services" in exchange

7    for licensing users' personal data for profit. SAC ¶¶ 189, 193. In addition, Meta represented that it had

8    teams and systems in place to "detect potential misuse of [Meta's] Products, harmful conduct towards

9    others, and situations where [Meta] may be able to help support or protect [its] community, including

10   to respond to user reports of potentially violating content." SAC ¶ 190. In its Privacy Policy, Meta

11   represented that it would "investigate suspicious activity, detect, prevent and combat harmful or

12   unlawful behavior …, [and] detect and prevent spam and *other bad experiences.*" SAC ¶ 191 (emphasis

13   added). Most importantly, Meta conveyed that it would suspend or restore access to accounts—not

14   leave them to hackers indefinitely while it still maintained a license to monetize personal information.

15   SAC ¶¶ 35-38 at 12-13 (Meta "may disable or delete your account if it appears to have been hacked

16   or compromised …" and give users "steps [they] can take to unlock [their] account.").

17       Finally, Plaintiffs have alleged reliance by alleging that "Plaintiffs' and Class members' belief

18   that Meta would maintain the security of their accounts, and would allow them to have access to their

19   own accounts and personal information, were substantial factors in Plaintiffs' and Class members'

20   decisions to open and use their accounts and to provide their valuable personal information." SAC

21   192. They thus sufficiently allege that "'had the omitted information been disclosed, one would have

22   been aware of it and behaved differently.'" *In re MacBook Keyboard Litig.,* 2019 WL 1765817, at *7.

23   Stated otherwise, had Plaintiffs known that even after being hacked, that they would not be able to

24   recover their accounts, and Meta would continue licensing their content, they would not have created

25   their accounts and provided their personal data to Meta. SAC ¶¶ 192-94. Moreover, here, since the

26   omission is material, it can be inferred that the Plaintiffs and all users would have behaved differently.

27   *In re MacBook Keyboard Litig.,* 2019 WL 1765817, at *7.

28

1    Accordingly, here, Plaintiffs have alleged the Who—Meta; the What—Meta's omission that it

2  would allow accounts to be stolen by hackers while it maintained its license to use information; the

3  Where—on the Facebook Platform and its TOS where Meta made omissions and contrary statements;

4  the When—when Plaintiffs created their Facebook accounts and provided personal property in the

5  form of information relying on Meta's omissions, and the How—Plaintiffs reasonable confusion and

6  deception stemmed from Meta's omission that accounts could be forever stolen while Meta kept the

7  license, which is a question of fact not appropriate for decision at this stage.

8                    4.    *Plaintiffs state a claim under the unfair prong of the UCL*

9    Plaintiffs have alleged sufficient facts to show that Meta's conduct violates the UCL under the

10  unfairness prong. California courts apply either the balancing or the tethering test to determine what

11  constitutes an "unfair" business practice. *Hodsdon*, 891 F.3d at 866. Under the tethering test, "the

12  public policy which is a predicate to a consumer unfair competition action under the 'unfair' prong of

13  the UCL must be tethered to specific constitutional, statutory, or regulatory provisions." *In re Adobe*

14  *Sys., Inc. Priv. Litig.*, 66 F. Supp. 3d 1197, 1226 (N.D. Cal. 2014). The balancing test looks at whether

15  the business practice is "'immoral, unethical, oppressive, unscrupulous or substantially injurious to

16  consumers and requires the court to weigh the utility of the defendant's conduct against the gravity of

17  the harm to the alleged victim.'" *Id.* (cleaned up). The tests are not mutually exclusive. *Epic Games, Inc.*

18  *v. Apple, Inc.*, 67 F.4th 946, 1000 (9th Cir. 2023).  Under either test, Plaintiffs have sufficiently alleged

19  an unfair prong claim, separate from their unlawful and fraudulent claims, because Plaintiffs have

20  alleged that Meta's conduct offends public policy identified by statutory provisions, and that the loss

21  of this personal information to hackers who then commit fought is a grave harm to Plaintiffs, putative

22  class members, and their connections on the platforms. SAC ¶¶ 116-117, 198.

23    Meta cites inapposite caselaw in an unsuccessful attempt to undermine Plaintiffs' UCL

24  unfairness claim. In these cases, courts rejected the plaintiffs' UCL unfairness claims because the

25  consumers knew the truth regarding their transactions. *See S. Bay Chevrolet v. Gen Motors Acceptance Corp.*,

26  72 Cal. App. 4th 861, 887-88 (Cal. Ct. App. 1999) (finding that lender's interest calculation practices

27  were not unfair because the borrower was aware of them and they were widely used); *Davis v. HSBC*

28  *Bank Nev.*, NA, 691 F.3d 1152, 1168-69 (9th Cir. 2012) (challenged business practice not against public

24

1   policy where possibility of alleged injury was disclosed and reasonably avoidable). Here, Plaintiffs did

2   not know that they would be left stranded and locked out of their accounts indefinitely while Meta

3   retained the license over their content. *See* SAC ¶¶ 51, 63-65, 80-81, 89-91, 101-02, 104-06. While Meta

4   misconstrues its obligations under the TOS, there is nothing in the TOS that would have put users on

5   notice that Meta would maintain its license to monetize their personal information while they would

6   not have access to the service, or even the ability to suspend their accounts and terminate the license.

7   *See* SAC ¶¶ 32-38. Finally, whether a practice is unfair—or even the resolution of the unfairness

8   balancing test—is a fact-intensive inquiry not conducive to a resolution on a motion to dismiss. *See*

9   *Regueiro v. FCA US, LLC,* 671 F. Supp. 3d 1085, 1098 (C.D. Cal. 2023) ("A finding of [w]hether a

10  practice is … unfair is generally a question of fact which requires consideration and weighing of

11  evidence from both sides and which usually cannot be made [at the pleading stage]"); *Sepanossian v.*

12  *Nat'l Ready Mixed Concrete Co.*, 97 Cal. App. 5th 192, 201 (Cal. Ct. App. 2023).

## V.    CONCLUSION

Based on the foregoing, Plaintiffs request that the Court deny Meta's motion in full. If, however, the Court decides to grant Meta's motion in any respect, Plaintiffs seek leave to amend, which should be freely given.

Date: September 2, 2025                    */s/ Annick M. Persinger*
                                           Annick M. Persinger (State Bar No. 272996)
                                           **TYCKO & ZAVAREEI LLP**
                                           1970 Broadway, Suite 1070
                                           Oakland, California 94612
                                           Telephone: (510) 254-6808
                                           Facsimile: (202) 973-0950
                                           *apersinger@tzlegal.com*

                                           Hassan A. Zavareei (State Bar No. 181547)
                                           Gemma Seidita (State Bar No. 322201)
                                           **TYCKO & ZAVAREEI LLP**
                                           2000 Pennsylvania Avenue, Northwest, Suite 1010
                                           Washington, District of Columbia 20006
                                           Telephone: (202) 973-0900
                                           Facsimile: (202) 973-0950
                                           *hzavareei@tzlegal.com*
                                           *gseidita@tzlegal.com*

                                           *Attorneys for Plaintiffs and the Putative Class*