WALTER F. BROWN (SBN: 130248)
wbrown@paulweiss.com
**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
535 Mission Street, 25th Floor
San Francisco, CA 94105
Telephone: (628) 432-5100
Facsimile: (628) 232-3101

MELISSA FELDER ZAPPALA (*Pro Hac Vice*)
mzappala@dirllp.com
**DUNN ISAACSON RHEE LLP**
401 9th Street NW
Washington DC, 20004
Telephone: (202) 240-2900
Facsimile: (202) 240-2050

MEREDITH R. DEARBORN (SBN: 268312)
mdearborn@dirllp.com
**DUNN ISAACSON RHEE LLP**
345 California Street, Suite 600
San Francisco, CA 94104
Telephone: (202) 240-2900

*Attorneys for Defendant Meta Platforms, Inc.*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| SARA ISGUR, ERIK BRAND, EDDIE EDWARDS, LINDA METZLER, and RICHARD REPP, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>META PLATFORMS, INC.<br><br>Defendant. | Case No. 3:24-cv-06559-WHO<br><br>**REPLY IN SUPPORT OF DEFENDANT META PLATFORMS, INC.'S MOTION TO DISMISS THE SECOND AMENDED CLASS ACTION COMPLAINT**<br><br>Date: October 15, 2025<br>Time: 2:00 p.m. PT<br>Courtroom: 2 (17th Floor)<br>Judge: Hon. William H. Orrick |

# **TABLE OF CONTENTS**

**Page(s)**

INTRODUCTION ........................................................................................................................... 1

ARGUMENT .................................................................................................................................. 2

I.    Plaintiffs Do Not Have Standing to Bring Any of Their Claims. ....................................... 2

II.    Plaintiffs Cannot Circumvent the Limitation of Liability Clause. ...................................... 3

III.    Plaintiffs' Breach of Contract Claim Fails (Count I). ......................................................... 4

    A.    The TOS Do Not Contain the Promises Claimed by Plaintiffs ................................ 4

    B.    Plaintiffs Have Not Sufficiently Alleged Damages. ................................................ 5

IV.    Plaintiffs' Implied Covenant Claim Fails (Count II). .......................................................... 6

V.    Plaintiffs Fail to Plead a Violation of the UCL (Count III). ............................................... 8

VI.    Plaintiffs Fail to Plead Unjust Enrichment (Count IV). .................................................... 10

CONCLUSION ............................................................................................................................. 10

# **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*618Media Dijital Hizmetler Ltd. Sirketi* v. *Apple Inc.*,
 2025 WL 2614983 (N.D. Cal. Sept. 9, 2025) .......................................................................... 6

*In re Anthem, Inc. Data Breach Litig.*,
 2016 WL 3029783 (N.D. Cal. May 27, 2016) ........................................................................ 9

*In re Bank of Am. Cal. Unemployment Benefits Litig.*,
 674 F. Supp. 3d 884 (S.D. Cal. 2023) .................................................................................... 7

*Bass* v. *Facebook, Inc.*,
 394 F. Supp. 3d 1024 (N.D. Cal. 2019) .................................................................................. 9

*Bayol* v. *Zipcar, Inc.*,
 78 F. Supp. 3d 1252 (N.D. Cal. 2015) .................................................................................... 5

*Brown* v. *140 NM LLC*,
 2019 WL 2750889 (N.D. Cal. May 20, 2019) ........................................................................ 3

*Doe* v. *Meta Platforms, Inc.*,
 690 F. Supp. 3d 1064 (N.D. Cal. 2023) .................................................................................. 3

*In re Facebook Privacy Litig.*,
 192 F. Supp. 3d 1053 (N.D. Cal. 2016) .............................................................................. 6, 8

*Free Range Content, Inc.* v. *Google*,
 2016 WL 2902332 (N.D. Cal. May 13, 2016) ........................................................................ 5

*Hahn* v. *Massage Envy Franchising, LLC*,
 2014 WL 5100220 (S.D. Cal. Sept. 25, 2014) ........................................................................ 5

*JH Kelly, LLC* v. *AECOM Tech. Servs., Inc.*,
 2022 WL 195648 (N.D. Cal. Jan. 21, 2022) ........................................................................... 6

*Joude* v. *WordPress Found.*,
 2014 WL 3107441 (N.D. Cal. July 3, 2014) ........................................................................... 4

*Lujan* v. *Defs. of Wildlife*,
 504 U.S. 555 (1992) ................................................................................................................ 2

*Lundy* v. *Facebook Inc.*,
 2021 WL 4503071 (N.D. Cal. Sept. 30, 2021) ....................................................................... 3

*McGuire* v. *More-Gas Invs., LLC*,
 220 Cal. App. 4th 512 (Cal. Ct. App. 2013) ........................................................................... 6

*Ruiz* v. *Gap, Inc.*,
   380 F. App'x 689 (9th Cir. 2010) .......................................................................................... 6

*Schmitt* v. *SN Servicing Corp.*,
   SAC. 2021 WL 5279822 (N.D. Cal. Nov. 12, 2021) ............................................................ 9

*SCRANTON* v. *E*,
   2014 Cal. Super. LEXIS 556 (Cal. Super. Ct. Oct. 20, 2014) ............................................ 10

*Shared.com* v. *Meta Platforms, Inc.*,
   2022 WL 4372349 (N.D. Cal. Sept. 21, 2022) ...................................................................... 3

*Spokeo, Inc.* v. *Robins*,
   578 U.S. 330 (2016) .............................................................................................................. 2

*TransUnion LLC* v. *Ramirez*,
   594 U.S. 413 (2021) .............................................................................................................. 2

*Wolf* v. *Walt Disney Pictures & Television*,
   162 Cal. App. 4th 1107 (Cal. App. Ct. 2008) ................................................................... 7, 8

*In re Yahoo! Inc. Customer Data Sec. Breach Lit.*,
   2017 WL 3727318 (N.D. Cal. Aug. 30, 2017) ................................................................. 8, 9

*Zaracotas* v. *AmGUARD Ins. Co.*,
   2024 WL 846239 (N.D. Cal. Feb. 28, 2024) ......................................................................... 7

**Statutes**

California Civil Code § 1668 .......................................................................................................... 3

California's Consumer Privacy Act ................................................................................................. 9

California's Consumer Records Act ................................................................................................ 9

FTC Act ............................................................................................................................................ 9

## INTRODUCTION

Abandoning their three primary theories of liability, Plaintiffs pivot in their Opposition, Dkt. No. 42 ("Opp."), to a fourth theory that is hardly mentioned in their Second Amended Complaint, Dkt. No. 37 ("SAC"): that they "licensed their personal information . . . to Meta in exchange for the right to use the Meta platform"; that Meta "monetized that license"; and that, when Plaintiffs' accounts were hacked, Meta "prevent[ed] Plaintiffs from being able to" access their accounts to cancel the license granted to Meta. Opp. at 7. But, this theory provides no lifeline for the sinking ship that is Plaintiffs' SAC. Their claims must be dismissed.

Plaintiffs' SAC focused on three alleged theories of liability—that Meta's Terms of Service ("TOS") and Privacy Policy contain binding commitments to: (1) prevent account takeovers, (2) restore users' access to accounts that were taken over, and (3) provide specific forms of customer support services to users who had their accounts taken over. SAC ¶¶ 2–9, 32–37, 111–12, 150–57. In its Motion to Dismiss, Dkt. No. 40 ("MTD"), Meta pointed out that Meta's TOS and Privacy Policy do not guarantee uninterrupted access to Facebook accounts, that Meta never promised to restore access to accounts that were taken over by third parties, and that Meta never promised users any specific form of customer service. MTD at 15–21. In their Opposition, Plaintiffs do not dispute these points. Now, perhaps recognizing the flaws in the case they have pled, they shift their focus to the licensing theory, which they argue can save their claims.

However, that is not the case. For the following reasons, Plaintiffs' claims still fail. **First**, Plaintiffs lack standing because they fail to allege a desire or attempt to terminate Meta's license.[1] **Second**, Plaintiffs fail to rebut Meta's argument that the limitation of liability provision in the TOS precludes Plaintiffs' claims for breach of contract, breach of the implied covenant of good faith and fair dealing, and unjust enrichment. **Third**, even if the limitation of liability provision does not preclude these claims, Plaintiffs' breach of contract claim would still fail because Plaintiffs have failed to allege any contractually enforceable promise or damages. **Fourth**, Plaintiffs' implied covenant claim is deficient, as it is duplicative of the breach of contract claim, Plaintiffs have not

---

[1] Separately, however, Plaintiffs fundamentally misread the terms of the TOS (as discussed *infra* at § III.A).

1  alleged bad faith or frustration of purpose, and the claim contradicts the express terms of the TOS.
2  **Fifth**, Plaintiffs' UCL claim fails because Plaintiffs lack standing and fail to demonstrate that
3  Meta's conduct is unlawful, fraudulent, or unfair. **Sixth**, Plaintiffs' unjust enrichment claim fails
4  because their other claims fail, and they do not dispute that they failed to allege that the TOS are
5  unenforceable or invalid.

## ARGUMENT

### I. PLAINTIFFS DO NOT HAVE STANDING TO BRING ANY OF THEIR CLAIMS.

Plaintiffs have no standing because they have not alleged any facts showing injury under their theory that Meta improperly retained a license to their content.

Plaintiffs allege that the following language in the TOS grants Meta a license to content that they post on Facebook: "When you share, post, or upload content . . . , you grant [Meta] a non-exclusive, transferable, sub-licensable, royalty-free, and worldwide license to host, use, distribute, modify, run, copy, publicly perform or display, translate, and create derivative works of your content." Opp. at 9; MTD Ex. 1 at 10; MTD Ex. 5 at 8. Plaintiffs contend that the following language in the TOS permits Plaintiffs to terminate Meta's license by deleting their content: "This license will end when your content is deleted from our systems. You can delete individual content you share, post, and upload at any time . . . . [T]his license will continue until the content has been fully deleted." Opp. at 9; MTD Ex. 1 at 10–12; MTD Ex. 5 at 8–9. In their Opposition, Plaintiffs argue that Meta precluded them from terminating this license while their accounts were taken over and that Meta continued to profit from this license. Opp. at 7–8. However, nowhere in the SAC do Plaintiffs allege that they attempted, or even desired, to access Facebook to revoke any license that they granted Meta or delete the "licensed" content.

Thus, Plaintiffs lack standing because they do not allege that they were injured by an inability to revoke Meta's license. To establish standing, plaintiffs must allege "an injury in fact that is concrete, particularized, and actual or imminent." *TransUnion LLC* v. *Ramirez*, 594 U.S. 413, 423 (2021). To be "particularized," an injury "must affect the plaintiff in a personal and individual way." *Lujan* v. *Defs. of Wildlife*, 504 U.S. 555, 560 n.1 (1992). To be "concrete," the injury "must actually exist." *Id.*; *Spokeo, Inc.* v. *Robins*, 578 U.S. 330, 340 (2016). Without

1  allegations that Plaintiffs sought to revoke the license or intended to delete the content posted on
2  their account, there are no facts showing injury under this licensing theory. *Brown* v. *140 NM LLC*,
3  2019 WL 2750889, at *3 (N.D. Cal. May 20, 2019) (because plaintiff "had not alleged that he
4  intended to dine at Defendants' restaurants in the immediate future, he failed to allege facts
5  sufficient to show he ha[d] standing"). Furthermore, Plaintiffs' allegations that Meta profited from,
6  or was benefitted by, the licenses granted by the specific Plaintiffs, do not confer standing. Any
7  profits or benefit Meta may have gained are irrelevant to injury *to Plaintiffs*. As such, all of
8  Plaintiffs' claims premised on this "license" theory must be dismissed.

9  **II.   PLAINTIFFS CANNOT CIRCUMVENT THE LIMITATION OF LIABILITY CLAUSE.**

11  For the reasons set forth in Meta's MTD, the limitation of liability provision precludes
12  Plaintiffs' claims for breach of contract, breach of the implied covenant of good faith and fair
13  dealing, and unjust enrichment (counts I, II, and IV). MTD at 13–14. Plaintiffs argue that this "same
14  disclaimer clause has been analyzed and rejected by this Court," Opp. at 10, but the cited cases are
15  inapposite, and thus Plaintiffs' claims should be dismissed.

16  Plaintiffs cite *Doe* v. *Meta Platforms, Inc.*, where the Court found that the limitation of
17  liability clause did not apply because California Civil Code Section 1668 does not permit limitation
18  of liability clauses to exempt parties for willful injury or fraud. 690 F. Supp. 3d 1064, 1084 (N.D.
19  Cal. 2023). There, the Court found that Plaintiffs had sufficiently alleged that Meta engaged in
20  intentional conduct by seeking to receive health information from subscribers. *Id.* at 1084–85. In
21  contrast, Plaintiffs here do not allege any such similar willful conduct.

22  Plaintiffs' other cited cases likewise fail to support their position. *Shared.com* v. *Meta
23  Platforms, Inc.* is not only on appeal but also inapposite because, there, plaintiff averred fraud by
24  defendant, 2022 WL 4372349, at *4 (N.D. Cal. Sept. 21, 2022). *Lundy* v. *Facebook Inc.* addressed
25  the question of whether the limitation of liability provision precluded a specific form of damages,
26  not whether the provision bars liability. 2021 WL 4503071, at *2 (N.D. Cal. Sept. 30, 2021).

27  Thus, the explicit limitation of liability provision precludes Plaintiffs' claims.

REPLY IN SUPPORT OF DEFENDANT META PLATFORMS, INC.'S MOTION TO DISMISS SECOND AMENDED COMPLAINT   -3-   CASE NO. 3:24-CV-06559-WHO

### III. PLAINTIFFS' BREACH OF CONTRACT CLAIM FAILS (COUNT I).

Plaintiffs' pivot to their "licensing theory" cannot overcome their failure to allege any contractually enforceable promise or damages sufficient to sustain a breach of contract claim.

#### A.  The TOS Do Not Contain the Promises Claimed by Plaintiffs.

Plaintiffs argue that Meta breached the express terms of the TOS by "maintaining its license to use Plaintiffs' personal information after Plaintiffs lost the use of their accounts, which also deprived them of the ability to revoke Meta's license to use their information as well." Opp. at 13. Plaintiffs also claim that the TOS state that Plaintiffs can revoke Meta's license by deleting their content and that Meta breached this promise "by precluding Plaintiffs from deleting their content and retaining its own license." *Id.* at 14 (citing SAC ¶ 36).

Yet the TOS contain no provision prohibiting Meta from maintaining a license to content from locked accounts. *Joude* v. *WordPress Found.*, 2014 WL 3107441, at *5 (N.D. Cal. July 3, 2014) ("A plaintiff cannot predicate a breach of contract claim on a defendant's terms of service where those terms did not commit the defendant to performing any particular action."). The TOS explicitly grant Meta a license to content uploaded by Plaintiffs—"when [users] share, post, or upload conduct . . . [they] grant [Meta] a . . . license to . . . use . . . your content." MTD Ex. 1 at 10; MTD Ex. 5 at 8 (same). This license is not subject to any limitations during account lockouts. While the TOS permit individuals to delete their content at any time, MTD Ex. 1 at 10; MTD Ex. 5 at 8, they do not guarantee uninterrupted access to Facebook, MTD Ex. 1 at 15; MTD Ex. 5 at 10 ("no guarantees that [Facebook] . . . will function without . . . imperfections").

Moreover, the TOS make clear that an individual cannot revoke Meta's license simply by deleting his/her content. The TOS distinguish between: (i) deletion of content by an individual and (ii) deletion of content from Meta's systems. For example, if an individual deletes content, but that "content has been used by others . . . and they have not deleted it," the content will not be deleted from Meta's systems, and Meta's license continues. MTD Ex. 1 at 10–11; MTD Ex. 5 at 8–9. Likewise, Meta will not delete content deleted by an individual when deletion would, *inter alia*, restrict Meta's ability to "investigate . . . violations of [Meta's] terms and policies." MTD Ex. 1 at 11; MTD Ex. 5 at 8. Therefore, the TOS do *not* state that deleting content automatically removes it

from Meta's system and terminates Meta's license.

### B. Plaintiffs Have Not Sufficiently Alleged Damages.

Plaintiffs claim they have sufficiently alleged damages because they have adequately pled liquidated and nominal damages. Not so. As explained in Meta's MTD, Plaintiffs have not sufficiently pled liquidated damages, nor have they adequately pled nominal damages.

Plaintiffs misread the damages cap provision in Section 4.3 of the TOS, which *limits* Meta's liability to the greater of the two amounts. MTD Ex. 1 at 15 ("Our aggregate liability . . . *will not exceed* the greater of $100 or the amount you have paid us in the past twelve months." (emphasis added)); MTD Ex. 5 at 11 (same). This means that, if a subscriber has not paid Meta anything over the last 12 months (which, as Plaintiff concedes, "does not apply here to these consumer users of Facebook," Opp. at 17), then the *maximum* liability of Meta is $100 because this provision states that damages "will *not exceed* . . . $100." MTD Ex. 1 at 15 (emphasis added); MTD Ex. 5 at 11. Plaintiffs claim that this is a liquidated damages provision because it is "a sum to be paid upon breach that is fixed and certain." Opp. at 17. But the language of Section 4.3 contradicts this argument—it states that damages "*will not exceed*" $100—it does not state that damages "*will be*" $100. For example, if Plaintiffs could prove $1 in damages, they would receive $1 under this provision—not $100.

The case Plaintiffs cite—*Bayol* v. *Zipcar, Inc.*—only further shows that this is not a liquidated damages provision. 78 F. Supp. 3d 1252 (N.D. Cal. 2015). *Bayol* shows that a liquidated damages provision is one that includes an express formula for calculating the exact amount of damages. *Id.* at 1256. There, the court found that the late fee provision, which provided that members must pay a "fee of $50 per hour, up to $150, for returning a car late" was a liquidated damages provision. *Id.* at 1254. That contrasts to the provision at issue here, which provides a damages cap but no indication of how to calculate what amount, if anything, Meta is to pay. Other cases Plaintiffs cite also support this point. *Hahn* v. *Massage Envy Franchising, LLC*, 2014 WL 5100220, at *12 (S.D. Cal. Sept. 25, 2014) (addressing membership agreement that required forfeiture of massages upon breach); *Free Range Content, Inc.* v. *Google*, 2016 WL 2902332, at *11 (N.D. Cal. May 13, 2016) (provision stated Google could withhold publisher's unpaid earnings

upon termination of account for invalid activity). Finally, Plaintiffs' citation to *McGuire* v. *More-Gas Invs., LLC*, is beside the point—there, the question was whether liquidated damages provisions were enforceable, not whether a contract *provided* an amount payable in case of breach. 220 Cal. App. 4th 512, 522 (Cal. Ct. App. 2013).

Nor can Plaintiffs claim nominal damages. The Ninth Circuit has stated that actual damages are needed to plead a breach of contract claim under California law, *Ruiz* v. *Gap, Inc.*, 380 F. App'x 689, 692 (9th Cir. 2010), and the California Supreme Court has not held otherwise. Plaintiffs rely on *In re Facebook Privacy Litigation*, which stated nominal damages were sufficient, but the court there noted the "uncertainty" in California law on this issue. 192 F. Supp. 3d 1053, 1061 (N.D. Cal. 2016). The Court should follow Ninth Circuit authority that actual damages are needed.

## IV. PLAINTIFFS' IMPLIED COVENANT CLAIM FAILS (COUNT II).

Plaintiffs' "licensing" theory cannot save their implied covenant claim.

***First***, in its MTD, Meta pointed out that an implied covenant claim cannot merely duplicate a breach of contract claim, MTD at 24—if a plaintiff fails to "sufficiently distinguish its implied covenant claim from its breach of contract claim," the plaintiff's implied covenant claim can be "disregarded as superfluous." *JH Kelly, LLC* v. *AECOM Tech. Servs., Inc.*, 2022 WL 195648, at *3 (N.D. Cal. Jan. 21, 2022). Plaintiffs concede as much, acknowledging that, to sustain an implied covenant claim, Plaintiffs cannot rest on the same facts as those that underlie the breach of contract claim, but must also "allege that a defendant acted in bad faith to frustrate the contract's actual benefit." Opp. at 23.

***Second***, Plaintiffs fail to allege Meta acted in bad faith because they do not allege that Meta exercised discretion in a manner outside "the reasonable contemplation of the parties at the time of formation," that Meta did not have "subjective belief in the validity of its acts," or that Meta acted in an "objectively unreasonable" manner. *618Media Dijital Hizmetler Ltd. Sirketi* v. *Apple Inc.*, 2025 WL 2614983, at *6–7 (N.D. Cal. Sept. 9, 2025). Plaintiffs claim that Meta acted in bad faith because Meta "maintain[s] a license to monetize Plaintiffs' and putative class members' personal information while Plaintiffs and class members do not have use of the service and could not even access the service to revoke Meta's license to their information." Opp. at 22. But this merely restates

their claim for liability, and Plaintiffs concede that the TOS grant Meta discretion to determine whether to restore access to taken-over accounts. SAC ¶¶ 164, 168, 174–77; *see also* Opp. at 13–14. Moreover, their assertion that Meta acted in bad faith by not granting access is contradicted by Plaintiffs' concession that Meta has put processes in place to assist users in retrieving their accounts. SAC ¶¶ 16, 18, 50, 63, 89–90. Plaintiffs also argue that Meta's retention of its license over Plaintiffs' data constitutes bad faith because it deprived Plaintiffs of the benefit of the bargain. But this requires a showing of economic harm. *Zaracotas* v. *AmGUARD Ins. Co.*, 2024 WL 846239, at *11 (N.D. Cal. Feb. 28, 2024) (describing "loss of the anticipated benefit of a bargain" as a "strictly economic loss[]"). As already shown, Plaintiffs cannot meet this requirement. *See supra* § III.B.

**Third**, Plaintiffs claim that Meta's license to Plaintiffs' content when Plaintiffs are unable to access their accounts "amounts to Meta's frustration of the purpose of the contract—the exchange of the customer's right to use the platform in exchange for Meta's license." Opp. at 14. But where, as here, "the conduct complained of was expressly bargained for, it cannot, by definition be considered to be outside the reasonable expectation of the parties." *Wolf* v. *Walt Disney Pictures & Television*, 162 Cal. App. 4th 1107, 1124 n.9 (Cal. App. Ct. 2008). As Plaintiffs admit, the TOS provide that it is "in Meta's discretion to decide whether to restore access to users," Opp. at 13–14, and the TOS explicitly state that there are situations in which Meta will not fully delete content and terminate its license, even after a user has deleted it. MTD Ex. 1 at 10–11; MTD Ex. 5 at 8–9. Plaintiffs cannot manufacture new obligations that guarantee them the ability to delete Meta's license where Meta's TOS do not include such a right. *In re Bank of Am. Cal. Unemployment Benefits Litig.*, 674 F. Supp. 3d 884, 933 (S.D. Cal. 2023).

**Fourth**, Plaintiffs' implied covenant claim conflicts with the express terms of the TOS. Plaintiffs acknowledge that Meta has discretion under the TOS, but nonetheless breached the TOS "by failing to exercise its discretion in either direction—by failing to restore access or to suspend the accounts while it keeps a license to monetize information." Opp. at 23. This argument is nonsensical—because Meta has full discretion, Meta is entitled to *not* undertake *either* of the actions identified by Plaintiffs. Plaintiffs' argument is that Meta only had discretion to choose

between two actions—restore access or suspend accounts—but the TOS do not limit Meta's discretion to these two discrete actions. MTD. Ex. 1 at 5 ("[W]e may take appropriate action *based on our assessment* that *may include*—notifying you, offering help . . . [or] disabling an account." (emphasis added)); MTD Ex. 5 at 4 (same). Imputing such an obligation to Meta contradicts the TOS' express terms, which give Meta discretionary authority. MTD at 25; *Wolf*, 162 Cal. App. 4th at 1122 ("Courts are not at liberty to imply a covenant directly at odds with a contract's express grant of discretionary power."). Moreover, the TOS explicitly state that there are certain situations in which Meta will not fully delete content and terminate its license, even after a user has deleted it. MTD Ex. 1 at 10–11; MTD Ex. 5 at 8–9. Thus, finding that Plaintiffs may terminate Meta's license at any time would contradict the TOS.

*Fifth*, Plaintiffs fail to sufficiently allege damages for the same reasons that their alleged damages cannot sustain their breach of contract claim. *See supra* § III.B.

### V. PLAINTIFFS FAIL TO PLEAD A VIOLATION OF THE UCL (COUNT III).

Plaintiffs' UCL claim fails because Plaintiffs do not rebut Meta's argument that they lack standing, nor do they demonstrate that Meta's conduct is unlawful, fraudulent, or unfair.

*First*, Plaintiffs do not meet the requirements necessary to show standing. Meta argued in its MTD that the injury alleged by Plaintiffs—the loss of their Facebook accounts and their associated content and vulnerability to future theft—is not "economic injury" sufficient to confer standing under the UCL. MTD at 27–28. Plaintiffs counter that "the Ninth Circuit and a number of district courts, including in this District, have concluded that plaintiffs who suffered a loss of their personal information suffered economic injury and had standing under the UCL," Opp. at 24, but the cases they cite say the opposite. In *In re Facebook Privacy Litigation*, plaintiffs alleged that they "were harmed both by the dissemination of their personal information and by losing the sales value of that information." 572 Fed. App'x 494 (9th Cir. 2014). The Ninth Circuit "affirm[ed] the district court's dismissal of plaintiff's UCL claim because plaintiffs failed to allege that they 'lost money or property as a result of the unfair competition.'" *Id.* Similarly, in *In re Yahoo! Inc. Customer Data Security Breach Litigation*, the court found that where, following a data breach, plaintiffs alleged they suffered a risk of future identity theft but failed to allege that they incurred

1  out-of-pocket expenses, plaintiffs' allegations were "not sufficient to allege 'lost money or
2  property' under the UCL." 2017 WL 3727318, at *21–22 (N.D. Cal. Aug. 30, 2017). The remaining
3  cases are inapposite. In *In re Anthem, Inc. Data Breach Litigation*, Plaintiffs alleged that they "paid
4  premiums which were then used to pay Defendants," and they sought the return of that money.
5  2016 WL 3029783, at *32 (N.D. Cal. May 27, 2016). Here, Plaintiffs do not allege that they lost
6  any money. Further, Plaintiffs acknowledge that they need to quantify their loss, and they point to
7  "reports [that] show that the value of a hacked Facebook account to be $45." Opp. at 26. But this
8  is the value of the account to *Meta*—not to *them*. *Bass* v. *Facebook, Inc.*, 394 F. Supp. 3d 1024,
9  1040 (N.D. Cal. 2019) ("That the information has external value, but no economic value to plaintiff,
10 cannot serve to establish that plaintiff has personally lost money or property.").

11       ***Second***, Plaintiffs assert that they have shown Meta's conduct is unlawful because they
12 have sufficiently alleged violations of the FTC Act, California's Consumer Records Act, and
13 California's Consumer Privacy Act. SAC ¶ 198. They claim that "[u]nless a federal statute
14 expressly forbids a private action, virtually any state, federal or local law can serve as the predicate
15 for an action under the UCL." Opp. at 26. But Plaintiffs cite no authority for this broad proposition,
16 which is directly contradicted by the authorities cited by Meta stating that the FTC Act and
17 California's Consumer Privacy Act cannot be used as a predicate for a UCL claim. MTD at 28.
18 Furthermore, as Meta noted in its MTD, Plaintiffs have failed to sufficiently allege how Meta's
19 conduct violated these laws. MTD at 28–29. *Schmitt* v. *SN Servicing Corp.*, cited by Plaintiffs,
20 makes clear that Plaintiffs must include basic allegations missing in their SAC. 2021 WL 5279822,
21 at *5 (N.D. Cal. Nov. 12, 2021) (Orrick, J.) (dismissing UCL claim where plaintiffs fail to "name
22 which specific provision of the FTC Act was alleged, let alone how"). And Plaintiffs now claim
23 they made certain allegations that are nowhere to be found in the SAC. For example, Plaintiffs
24 claim that they alleged Meta employed "unfair and deceptive business practices" in violation of the
25 FTC Act. Opp. at 27. But the SAC contains no such allegation. *See* SAC at ¶ 198.

26       ***Third***, Plaintiffs' allegations do not establish that Meta's conduct is fraudulent. They claim
27 that Meta omitted "that it would allow accounts to be stolen by hackers while it maintained its
28 license to use information." Opp. at 30. But Plaintiffs do not—and cannot—allege that Meta failed

1  to disclose that its license could continue if Plaintiffs lost access to their accounts, as Meta's TOS
2  clearly state that Meta does not guarantee account access, MTD at 19, and that Meta may not always
3  delete content from its systems when a user's "content has been used by others . . . and they have
4  not deleted it," MTD Ex. 1 at 11; MTD Ex. 5 at 8. Because Meta fully disclosed this information,
5  there is no omission—and, therefore, no fraud. *See SCRANTON* v. *E*, 2014 Cal. Super. LEXIS 556,
6  at *22–23 (Cal. Super. Ct. Oct. 20, 2014) (plaintiff failed to allege UCL violation where the
7  complaint's exhibits "show[ed] that sufficient disclosures were made" and thus "[did] not allege a
8  sufficient false representation or omission").

9       *Fourth*, Plaintiffs' allegations do not establish that Meta's conduct is unfair because courts
10  are unwilling to recognize unfairness where, as here, consumers knew the truth regarding the
11  relevant transaction, which is that uninterrupted access to Facebook accounts is not guaranteed. *See*
12  MTD at 32. Plaintiffs' only response is that "Plaintiffs did not know" they would lose access to
13  their accounts while Meta retained a license over their content. Opp. at 31. In support of this
14  argument, Plaintiffs cite various provisions in the SAC describing their efforts to regain access to
15  their account and alleging that they were unable to regain access, *see* SAC ¶¶ 51, 63–65, 80–81,
16  89–91, 101–02, 104–06, but they are unable to cite to a single allegation that they did not know
17  Meta's license would continue. Nor could they. As explained *supra* § III.A, the TOS make clear
18  that Meta has a license to uploaded content and that Meta does not guarantee unfettered access to
19  Facebook.

20  **VI.  PLAINTIFFS FAIL TO PLEAD UNJUST ENRICHMENT (COUNT IV).**

21       Plaintiffs' unjust enrichment claim fails for the reasons set forth in the MTD. Courts
22  routinely dismiss unjust enrichment claims where plaintiffs cannot assert substantive claims. MTD
23  at 33–34. Moreover, Plaintiffs do not dispute that they have failed to allege that the TOS are
24  unenforceable or invalid, which is required to plead an unjust enrichment claim in the alternative.
25  MTD at 34.

26                                        **CONCLUSION**
27       The Court should dismiss the Second Amended Complaint in its entirety with prejudice.
28

| | | |
|---|---|---|
| 1 | Dated: October 2, 2025 | PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP |

By: /s/ *Walter F. Brown*
   Walter F. Brown (SBN: 130248)
   wbrown@paulweiss.com
**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
535 Mission Street, 25th Floor
San Francisco, CA 94105
Telephone: (628) 432-5100
Facsimile: (628) 232-3101

Melissa F. Zappala
mzappala@dirllp.com
**DUNN ISAACSON RHEE LLP**
401 9th Street NW
Washington, DC 20004
Telephone: (202) 240-9700
Facsimile: (202) 240-2050

Meredith R. Dearborn (SBN: 268312)
mdearborn@dirllp.com
**DUNN ISAACSON RHEE LLP**
345 California Street, Suite 600
San Francisco, CA 94104
Telephone: (202) 240-2900

*Attorneys for Defendant Meta Platforms, Inc.*